JOHN P. ARMSTRONG, Plaintiff-Appellant v. MARY E. DROESSLER, Defendant-Appellee

No. COA05-617

(Filed 6 June 2006)

**Child Support, Custody, and Visitation— support—reduction in income—findings not sufficient**

The issue of involuntary reduction in the income of a parent moving to reduce child support could not be resolved because the court did not make specific findings about the amount of plaintiff's income at the time of the hearing.

Judge Calabria dissenting.

Appeal by plaintiff from order entered 16 September 2004 by Judge Anne B. Salisbury in District Court, Wake County. Heard in the Court of Appeals 22 March 2006.

*Rosen Law Firm, by Scott E. Allen, for plaintiff-appellant.*

*No brief filed by defendant-appellee.*

McGEE, Judge.

John P. Armstrong (plaintiff) and Mary E. Droessler (defendant) (collectively the parties) were married 29 November 1990. During their marriage, the parties had two children, born 30 December 1994 and 4 January 1999. The parties signed a consent order for custody and child support dated 8 May 2002, the terms of which required plaintiff to pay defendant $1,800.00 ($900.00 per child) per month as child support. Plaintiff subsequently filed a motion in the cause to modify child support. He alleged a substantial change of circumstances since the entry of the consent order that affected plaintiff's ability to provide child support.

After a hearing on 30 June 2004, the trial court denied plaintiff's motion. In its order denying plaintiff's motion, the trial court made the following pertinent findings of fact:

3. . . . At the time of the entry of the Consent Order, Plaintiff had a gross income of $170,000 per year.

4. At the time of the entry of the Consent Order, Plaintiff was one-third owner of a company called Monolith, a computer software

ARMSTRONG v. DROESSLER

[177 N.C. App. 673 (2006)]

company. The company was for sale and the presumptive value of Plaintiff's share of the company was recited within the Consent Order at between $1 and $1.5 million. The parties knew at the time of the entry of the Consent Order that when the company sold, the Plaintiff would have to have new employment.

5. The company did, in fact, sell. To effectuate the sale, Plaintiff established a Domestic Non-Grantor Trust in the State of Nevada and transferred his shares of stock to the trust. His share of the company was purchased by the Buyer via payment of Plaintiff's $1.3 million share of the purchase price into the trust in exchange for Plaintiff's share of the company stock.

6. The Trust which was established is an irrevocable trust in which Plaintiff's proceeds are not payable until age 65 and at a rate of $500,000.00 per year. . . . Plaintiff does have the ability to borrow from the Trust and has done so. The children are beneficiaries of the Trust at Plaintiff's death. . . .

7. After the sale of Monolith, Plaintiff decided to pursue his dream of working in the aviation industry. He began working as a fund-raiser for the Wright Brothers Centennial of Flight celebration[.] . . . He worked in this capacity until January, 2004 when the Centennial Celebration came to an end. . . . In 2003, Plaintiff received $43,000.00 from the "First in Flight" celebration and also set up Buyitright.com a subsidiary to market VIP seating at the event. Plaintiff has since tried to secure employment with the North Carolina Department of Transportation in the aviation field.

8. Since the entry of the Consent Order, Plaintiff has remarried and his Wife makes a six figure income and contributes to his support.

. . .

12. At the time of the entry of the Consent Order, Plaintiff and Defendant both knew Plaintiff would be selling his interest in Monolith and could conceivably be without income or without the income he enjoyed[.] [Plaintiff] also knew that he would have between $1 million and $1.3 million at his disposal but instead established a trust placing the funds beyond his reach, except for loans, and beyond the reach of creditors, and ensuring one half million dollars per year to himself at age 65.

Based on its findings, the trial court concluded the following: (1) there had been no change of circumstances since the entry of the

ARMSTRONG v. DROESSLER

[177 N.C. App. 673 (2006)]

consent order justifying a modification of child support, (2) the needs of the children had not decreased, and (3) plaintiff was not entitled to a modification of his child support obligation. Plaintiff appeals. On appeal, plaintiff brings forward six assignments of error. Assignments of error not argued in plaintiff's brief are deemed abandoned. N.C.R. App. P. 28(b)(6).

---

Child support orders may be modified pursuant to N.C. Gen. Stat. § 50-13.7(a) (2005) which states: "An order of a court of this State for support of a minor child may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances[.]" Our Court has deemed modification of child support a two-step process. *McGee v. McGee*, 118 N.C. App. 19, 26, 453 S.E.2d 531, 536, *disc. review denied*, 340 N.C. 359, 458 S.E.2d 189 (1995). A trial court "must first determine a substantial change of circumstances has taken place; only then does it proceed to apply the [North Carolina Child Support] Guidelines to calculate the applicable amount of support." *Id.* at 26-27, 453 S.E.2d at 536. The burden of demonstrating changed circumstances rests upon the party moving for modification of support. *Id.* at 26, 453 S.E.2d at 535.

The trial court in the present case dealt solely with the first step of modification: whether there was a substantial change of circumstances. The trial court concluded there had been no change of circumstances warranting modification of child support. Plaintiff assigns error to this conclusion, arguing that the conclusion was not supported by the trial court's findings. Plaintiff further argues he was entitled to modification because he suffered an involuntary reduction in income, which affected his ability to pay for the needs of the parties' children. The trial court found that the needs of the children had not changed. Plaintiff does not challenge this factual finding, and therefore it is binding on appeal. *See Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

In cases where the needs of the children have not changed, a substantial change of circumstances can be found to exist based on a parent's ability to pay. *Askew v. Askew*, 119 N.C. App. 242, 244, 458 S.E.2d 217, 219 (1995). Our Court has explained:

> A substantial and *involuntary* decrease in a parent's income constitutes a changed circumstance, and can justify a modification of a child support obligation, even though the needs of the child are unchanged. A *voluntary* decrease in a parent's income, even if sub-

stantial, does not constitute a changed circumstance which alone can justify a modification of a child support award. A *voluntary* and substantial decrease in a parent's income can constitute a changed circumstance only if accompanied by a substantial decrease in the needs of the child.

*Mittendorff v. Mittendorff*, 133 N.C. App. 343, 344, 515 S.E.2d 464, 466 (1999) (internal citations omitted). In the present case, since it is undisputed that there was no change in the needs of the children, a determination of a "substantial and involuntary" decrease in plaintiff's income would be necessary to constitute a changed circumstance justifying modification of plaintiff's child support obligation. *See id.* Plaintiff argues the trial court erred in not finding that he suffered an involuntary decrease in income. A review of the record shows the trial court's order does not include any findings as to whether plaintiff's income had decreased, and if so, whether any such decrease was substantial and involuntary.

In *Pittman v. Pittman*, 114 N.C. App. 808, 443 S.E.2d 96 (1994), the trial court denied the defendant's motion for a reduction in child support because the defendant offered no evidence of a reduction in the needs of the defendant's children. *Id.* at 809, 443 S.E.2d at 97. The facts of *Pittman* are similar to the present case; the evidence in *Pittman* tended to show that the defendant's ability to pay child support had decreased, but that the needs of the children had not changed. *Id.* at 811, 443 S.E.2d at 97. Our Court reversed the trial court's denial of the defendant's motion, holding that modification was not barred as a matter of law by the absence of a change in the children's needs. *Id.* at 810-11, 443 S.E.2d at 97-98. Our Court remanded the matter to the trial court for a determination of whether the defendant suffered a substantial and involuntary decrease in income sufficient to warrant modification of child support. *Id.* at 811, 443 S.E.2d at 98.

In the present case, as in *Pittman*, there was no evidence that the needs of the children had changed since entry of the prior order; however, there was evidence that plaintiff's ability to pay his child support obligation had decreased. The trial court found that at the time of the entry of the consent order, plaintiff had a gross income of $170,000.00 per year. Although the trial court made no finding as to plaintiff's gross income at the time of the modification hearing, evidence in the record shows that plaintiff's gross income for the last taxable year prior to the hearing was $31,947.81. Therefore, there was competent evidence that plaintiff's income was substantially reduced. To constitute a changed

ARMSTRONG v. DROESSLER

[177 N.C. App. 673 (2006)]

circumstance warranting modification, this substantial reduction in income must have been shown by plaintiff to be involuntary. *See Mittendorff*, 133 N.C. App. at 344, 515 S.E.2d at 466.

On the issue of the voluntariness of plaintiff's income reduction, the trial court made the following uncontested findings: (1) plaintiff knew at the time of the consent order that when the company sold, he would have to find new employment; (2) plaintiff's $1.3 million share of the purchase price of the company was deposited into an irrevocable trust, the proceeds of which could be accessed by plaintiff only through a loan and from which proceeds would not be payable to plaintiff until age sixty-five; (3) plaintiff decided to "pursue his dream" of working in the aviation industry and earned $43,000.00 for his work with the First in Flight celebration; (4) after the end of the celebration, plaintiff tried to find employment with the North Carolina Department of Transportation; (5) the brokerage house managing plaintiff's trust was involved in fraudulent activity; and (6) at the time of the hearing, the trust contained $100,000.00, which was available to plaintiff only through a loan.

In summary of those uncontested findings, the trial court made finding number twelve, which plaintiff contests:

12. At the time of the entry of the Consent Order, Plaintiff and Defendant both knew Plaintiff would be selling his interest in Monolith and could conceivably be without income or without the income he enjoyed[.] [Plaintiff] also knew that he would have between $1 million and $1.3 million at his disposal but instead established a trust placing the funds beyond his reach, except for loans, and beyond the reach of creditors, and ensuring one half million dollars per year to himself at age 65.

Plaintiff argues there was insufficient evidence to support finding number twelve. Because finding number twelve is merely a summation of other uncontested findings, we overrule this assignment of error.

Plaintiff also argues that the trial court erroneously "invoked the earning capacity rule" in finding number twelve. Earning capacity may be used to impute income to a party for the purpose of calculating child support. *See Ellis v. Ellis*, 126 N.C. App. 362, 364, 485 S.E.2d 82, 83 (1997). In the present case, however, the trial court never reached the step of calculating plaintiff's child support obligation, since the trial court found no change of circumstances warranting a modification of plaintiff's current obligation. Therefore, plaintiff's discussion of the

earning capacity rule is incorrect. The more accurate inquiry for our Court is whether the trial court's order contained sufficient findings to support its legal conclusion that no change of circumstances had occurred. A determination of whether there has been a substantial change of circumstances is a legal conclusion, which must be supported by adequate findings of fact. *See Garrett v. Garrett*, 121 N.C. App. 192, 197, 464 S.E.2d 716, 720 (1995), *disapproved of on other grounds by Pulliam v. Smith*, 348 N.C. 616, 620, 501 S.E.2d 898, 900 (1998). The findings of fact must be "material findings of fact which resolve[] the issues raised[] . . . [and] must be sufficient to allow an appellate court to determine upon what facts the trial court predicated its judgment." *Ebron v. Ebron*, 40 N.C. App. 270, 271, 252 S.E.2d 235, 236 (1979).

In the present case, the trial court found at the time of the hearing that (1) plaintiff's irrevocable trust contained approximately $100,000.00, (2) plaintiff could access the trust by loan only, and (3) plaintiff received $43,000.00 in income in 2003. However, the trial court made no specific finding as to the amount of plaintiff's income at the time of the hearing. Without a specific finding as to plaintiff's income at the time of the hearing, the issue of whether plaintiff's income had been involuntarily decreased cannot be resolved. *Cf. McGee*, 118 N.C. App. at 28, 453 S.E.2d at 536-37 (holding that, where the trial court's findings of fact included, *inter alia*, the amount by which the defendant's monthly income had decreased and that the defendant's estate had been "substantially depleted," the trial court's findings were sufficient under *Pittman* to uphold a determination of changed circumstances).

Accordingly, we apply our holding in *Pittman* to the facts of the present case. We vacate the trial court's dismissal of plaintiff's motion for modification of child support. We remand to the trial court to determine whether plaintiff's income was substantially and involuntarily decreased by an amount sufficient to warrant a reduction in child support. If the trial court finds a voluntary decrease in plaintiff's income, plaintiff's threshold burden of showing substantial change in circumstances has not been met, and the trial court is without authority to modify the existing child support order. *See Davis v. Risley*, 104 N.C. App. 798, 800-01, 411 S.E.2d 171, 173 (1991). If, however, the trial court determines that plaintiff suffered a substantial and involuntary decrease in income sufficient to warrant modification, the trial court shall proceed to the next step of calculating plaintiff's reduced child support obligation. *See McGee*, 118 N.C. App. at 26-27, 453 S.E.2d at 536. In calculating plaintiff's obligation, "without a showing of deliberate depression of income or other bad faith, the trial court is without power to

ARMSTRONG v. DROESSLER

[177 N.C. App. 673 (2006)]

impute income, and must determine [plaintiff's] child support obligation based on [plaintiff's] actual income." *Ellis*, 126 N.C. App. at 365, 485 S.E.2d at 83. If, however, the trial court finds that plaintiff was acting " 'in bad faith by deliberately depressing [his] income or otherwise disregarding the obligation to pay child support,' [plaintiff's] earning capacity can be used to determine his child support obligation." *Chused v. Chused*, 131 N.C. App. 668, 671, 508 S.E.2d 559, 562 (1998) (quoting *Schroader v. Schroader*, 120 N.C. App. 790, 794, 463 S.E.2d 790, 792 (1995)).

Vacated and remanded.

Judge GEER concurs.

Judge CALABRIA dissents with a separate opinion.

CALABRIA, Judge, dissenting.

Because I disagree with the majority's holding that the trial court's findings were insufficient to support its conclusion that there was no change of circumstances justifying a modification of child support, I respectfully dissent.

North Carolina General Statutes § 50-13.7(a) (2005) states, "An order of a court of this State for support of a minor child may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances." *Royall v. Sawyer*, 120 N.C. App. 880, 882, 463 S.E.2d 578, 579 (1995). The party requesting modification has the burden of demonstrating changed circumstances. *McGee v. McGee*, 118 N.C. App. 19, 26, 453 S.E.2d 531, 535 (1995) (citations omitted). In this case, the trial court specifically found, and plaintiff does not contest, that "the needs of the minor children have not decreased since the entry of the Consent Order." Nonetheless, even when the children's needs have not changed, a modification of child support may still be warranted if there is a substantial and *involuntary* decrease in a parent's income that constitutes a changed circumstance. *Mittendorff v. Mittendorff*, 133 N.C. App. 343, 344, 515 S.E.2d 464, 466 (1999) (citations omitted). However, if there is a *voluntary* decrease in a parent's income, even if substantial, it cannot constitute a changed circumstance if there is no decrease in the needs of the minor children. *Schroader v. Schroader*, 120 N.C. App. 790, 794, 463 S.E.2d 790, 793 (1995). Thus, in the case *sub judice*, because the minor children's needs did not decrease, the only way plaintiff could establish a substantial change in

circumstances would be by showing an *involuntary* decrease in his income. *See Mittendorff, supra; Schroader, supra.*

> Yet, the pertinent findings of fact establish that any change of circumstance was *voluntary*:
>
> 4. At the time of entry of the Consent Order, Plaintiff was one-third owner of a company called Monolith, a computer software company. The company was for sale and the presumptive value of Plaintiff's share of the company was recited with the Consent Order at between $1 and $1.5 million. The parties knew at the time of the entry of the Consent Order that when the company sold, the Plaintiff would have to have new employment.
>
> 5. The company did, in fact, sell. To effectuate the sale, Plaintiff established a Domestic Non-Grantor Trust in the State of Nevada and transferred his shares of stock to the trust. His share of the company was purchased by the Buyer via payment of Plaintiff's $1.3 million share of the purchase price into the trust in exchange for Plaintiff's share of the company stock. . . .
>
> 7. After the sale of Monolith, Plaintiff decided to pursue his dream of working in the aviation industry. He began working as a fundraiser for the Wright Brothers Centennial of Flight celebration[.] . . . Plaintiff has an airplane which he used in fundraising and established a website for the marketing of "First in Flight" products and memorabilia. He conducted business under the name of "Five Star Marketing, Inc." He worked in this capacity until January 2004 when the Centennial Celebration came to an end. Five Star Marketing, Inc. is an aviation marketing firm, marketing charter flights. In 2003, Plaintiff received $43,000.00 from the "First in Flight" celebration and also set up Buyitright.com a subsidiary to market VIP seating at the event. Plaintiff has since tried to secure employment with the North Carolina Department of Transportation in the aviation field.
>
> 8. Since the entry of the Consent Order, Plaintiff has remarried and his Wife makes a six figure income and contributes to his support.
>
> . . .
>
> 12. At the time of the entry of the Consent Order, Plaintiff . . . knew [he] would be selling his interest in Monolith and could conceivably be without income or without the income he enjoyed[.] He also

knew that he would have between $1 million and $1.3 million at his disposal but instead established a trust placing the funds beyond his reach, except for loans, and beyond the reach of creditors, and ensuring one half million dollars per year to himself at age 65.

These findings sufficiently establish that any decrease in plaintiff's income was *voluntary* in that plaintiff put between $1 million and $1.3 million dollars in a trust where he could not reach it until age 65 and switched his career path by pursuing his dream job of working in the aviation industry. *See Mittendorf*, 133 N.C. App. at 344, 515 S.E.2d at 466 (holding a defendant's voluntary redirection of his career could not support a modification of support when the minor children's needs had not changed); *Schroader*, 120 N.C. App. at 795, 463 S.E.2d at 793 (holding that a custodial parent's voluntary reduction in income by quitting her employment to attend school could not lead to modification of child support in the absence of her showing a change in circumstances relating to the needs of the minor children). Although the trial court does not use the word "voluntary" in its findings of fact, its language sufficiently establishes that plaintiff voluntarily made the choices that led to his current predicament. *See Mittendorf*, 133 N.C. App. at 344, 515 S.E.2d at 466. Since the findings establish that any decrease in income was voluntary, a modification of child support was impermissible given that the minor children's needs did not decrease. *See Schroader*, 120 N.C. App. at 795, 463 S.E.2d at 793. Accordingly, I would hold that the trial court's findings support its conclusion that there has been no change of circumstances warranting modification of child support, and I would affirm the order of the trial court.