MARK STEVEN HIBSHMAN, Plaintiff v. LUDMILLA HIBSHMAN, Defendant

No. COA10-435

(Filed 17 May 2011)

**Child Custody and Support— change in custody—failure to find substantial change of circumstances**

The trial court erred by changing custody of the minor children without first determining there had been a substantial change of circumstances. The case was remanded.

Appeal by defendant from order entered 21 October 2009 by Judge Charlie Brown in Rowan County District Court. Heard in the Court of Appeals 26 October 2010.

*Sherrill & Cameron, PLLC, by Carlyle Sherrill, for Plaintiff-Appellee.*

*Horack, Talley, Pharr & Lowndes, P.A., by Elizabeth J. James and Kary C. Watson, for Defendant-Appellant.*

ERVIN, Judge.

Defendant Ludmilla Hibshman appeals from orders changing the custody of her minor children from Defendant to Plaintiff Mark Steven Hibshman entered by the trial court on 21 October 2009. On appeal, Defendant contends, among other things, that she did not have the ability under North Carolina law to waive the necessity for a showing of a change in circumstances as a precondition for modification of a prior custody order and that the trial court erred by failing to address the "changed circumstances" issue in reliance on her agreement not to insist that such a showing be made. After careful consideration of Defendant's challenges to the trial court's orders in light of the record and the applicable law, we conclude that the trial court's orders should be reversed and that this case should be remanded to the Rowan County District Court for further proceedings not inconsistent with this opinion.

## I. Factual Background

Plaintiff and Defendant were married in Pennsylvania on 5 September 1998. The couple had two children, a daughter, who was born in 2000, and a son, who was born in 2003.

On 10 January 2008, Plaintiff filed a complaint seeking custody of the children, a divorce from bed and board, child support, post-separation support, and alimony. On 6 March 2008, Plaintiff, without providing any notice to Defendant, took the children and moved back to Pennsylvania. On 11 March 2008, Defendant filed a motion, which Judge William C. Kluttz granted on the following day, seeking immediate temporary custody. On 25 April 2008, the trial court entered a temporary custody order granting the parties joint custody of the children.

In July 2008, the trial court conducted a hearing for the purpose of addressing child custody issues.[1] On 14 July 2008, counsel for the parties orally argued their respective positions to the trial court. At that time, the trial court and the parties discussed the possibility that Plaintiff and Defendant would enter into a stipulation addressing future modification of any custody order that the trial court might ultimately enter:

THE COURT: But [Defendant has] been willing to say that in the event I award her custody during the school year that . . . would be by her agreement and contingent upon her maintaining the residence, therefore, maintaining [the daughter's] enrollment and sometime soon [the son's] enrollment in the Granite Quarry School District. Do I hear you correctly on that?

[DEFENSE COUNSEL]: Yes, that would be—we would be willing—and again, I don't know if the Court of Appeals says all kinds of funny things about what a judge can do with custody orders.

THE COURT: I don't believe I can mandate that.

[DEFENSE COUNSEL]: And to the . . . extent that you cannot, we would stipulate, correct?

[DEFENDANT]: Yes.

. . .

THE COURT: Now, coming back to how that all links up to her concession that she'd be willing to . . . have imposed upon her the requirement she maintain the home, otherwise this thing

---

1. The transcript of the July 2008 evidentiary hearing has not been provided to the Court in connection with Defendant's appeal. However, there is a transcript of the arguments of counsel relating to the issues before the court as a result of that hearing, which occurred on 14 July 2008, in the materials that have been presented for purposes of our review.

unravels, it's subject to review without further evidence, etcetera, is an interesting argument.

At the conclusion of the oral argument, the trial court announced certain findings of fact and then stated that:

> [THE COURT:] All right. Based on those Findings of Fact, the Court concludes that both parents are fit and proper parents to have custody of their children. Their homes are appropriate and meet the needs of their children. The Court does find that it would be in the best interest for [the children] to be in the primary custody of their mother. And that is going to be by her agreement with this unusual contingency that is offered, and so I'd like it to be spelled out in the Findings of Fact. It's not a stipulation. I resist that word because it's not something that—I mean, this is—this announcement of judgment is as a result of a contested hearing and so nothing about this is what you're agreeing to, but it creates a burden for her, and so it's by her agreement—it's not court mandate—but it's going to be adopted by the Court that she will be a primary custodian during the school year—during the Rowan County school year for [the children] so long as she maintains residence so that [the daughter] may continue to be enrolled in Granite Quarry Elementary School. In the event that cannot be maintained, the matter may be rescheduled by calendar request and notice of hearing. Without the burden of proving substantial change of circumstances, the Court may receive additional evidence to evaluate whether custody during the school year should continue with defendant or not. Do I understand that to be your agreement, [Defense Counsel]?

> [DEFENSE COUNSEL]: Yes, Your Honor[.]

On 5 September 2008, the trial court entered an order granting custody of the children to Defendant and including the following findings:

> 9.   On March 6, 2008, while the Defendant was at work, the Plaintiff moved from the marital home, took the children, and moved to Pennsylvania, all without notice to the Defendant.

> 10.   On March 12, 2008, the Defendant sought and obtained an immediate custody order . . . . placing [the children] in the immediate custody of the Defendant.

> 11.   A temporary custody hearing was held on March 19, 2008, and an order entered granting the parties shared custody . . . but requiring the children to remain in school in Rowan County.

. . .

31.  Defendant's home is a fit and proper place for the children to reside[.]

32.  Plaintiff's home is a fit and proper place for the children to reside[.]

. . .

48.  Both parties are fit and proper persons to have custody of the minor children.

Based upon these and other findings of fact, the trial court concluded that "[a]n award of custody as set forth below is in the best interests of the minor children" and ordered, in pertinent part, that:

1.  Defendant is granted primary custody of the minor children during the school year.

2.  Plaintiff is granted primary custody during the summer[.]

. . .

7.  Defendant's primary custody of the children during the school year is conditioned on Defendant maintaining a home in the Granite Quarry Elementary School district, while the children are still in elementary school. If she does not, this court may receive additional evidence and this order may be modified without a showing of a substantial change in circumstances.

Above Decretal Paragraph No. 7, the trial court initialed a handwritten notation that this provision was included "w/consent of [Defendant.]"

On 17 July 2009, Plaintiff filed a motion seeking a change of custody. In his motion, Plaintiff alleged that, after Defendant lost her job in Rowan County, she relocated to Greenville, South Carolina, where she found other employment. In addition, Plaintiff asserted that, although the children had relatives near his home in Pennsylvania, they had no similar family connections in South Carolina. In reliance on Decretal Paragraph No. 7 of the 5 September 2008 custody order, Plaintiff requested the trial court to modify its earlier order and award primary custody of the children to him.

On 9 September 2009, Plaintiff's motion came on for hearing before the trial court. Prior to receiving evidence, the trial court engaged in the following colloquy with counsel for the parties:

**HIBSHMAN v. HIBSHMAN**

[212 N.C. App. 113 (2011)]

THE COURT: All right. Can I inquire of counsel, is there a stipulation? We had this pre-trial discussion yesterday. Is there a stipulation that the evidence presentation will sort of leap-frog the substantial change test and be considered by the Court on evaluation of best interest for custody?

[PLAINTIFF'S COUNSEL]: Yes, Your Honor, according to the prior court order substantial change in circumstances would not have to be shown, and this would merely be best interest of the child—children.

THE COURT: Is that a stipulation, Mr. Inge?

[DEFENSE COUNSEL]: Yes, I can live with that stipulation.

At the hearing, Plaintiff testified that he was born and raised in Pennsylvania and had moved to North Carolina solely because Defendant had employment there. After Defendant received primary custody of the children, Plaintiff returned to his home community in Pennsylvania, which was fairly close to the places where other members of his family lived and was where he planned to remain permanently. On cross-examination, Plaintiff agreed that the children had done well in school while in Defendant's custody.

Defendant testified that, for the past fifteen years, she had been employed selling specialized vans that had been converted for use by handicapped individuals. After being laid off from the job she held at the time of the earlier custody hearing, Defendant found a job in the same field that paid a higher salary, offered more prospects for advancement, and had more flexible hours in Greenville, South Carolina. As a result, Defendant moved to Simpsonville, South Carolina, where the children were enrolled in Bethel Elementary School, an institution that has been designated a National School of Excellence and that is located two miles from Defendant's home. After her separation from Plaintiff, Defendant became involved with an individual named Will Martinez. As of the date of the 9 September 2009 hearing, Defendant and Mr. Martinez had been dating for about a year and planned to marry within the ensuing twelve months. Defendant acknowledged on cross-examination that she had agreed to remain in Rowan County at the earlier hearing.

After the presentation of evidence, the trial court stated that:

THE COURT: All right. Matter comes on for a modification of the Order that was entered on September 5th following the trial

that occurred on July 15th. By stipulation of the parties and consistent with the Order language, the Court convened this hearing for a best interest determination despite the existence of a custody order being entered.

Further, by stipulation of the parties, the Findings of Fact contained and enumerated 1 through 48 in the [5 September 2008] custody order are incorporated by reference and are received by this Court in addition to the additional testimony and exhibits presented this date in the Court's determination of best interest of the parties' minor children[.]

The Court further notes that [the children] are now enrolled in school having begun the 09-2010 academic year in South Carolina. [The son] is now a first grader; that [the daughter] is a fourth grader[, and] . . . both performed exceptionally in school the last academic year while in primary custody of Ms. Hibshman.

That the exhibits presented by both movant and respondent are received and incorporated into the Court's Findings of Fact and the Court does specifically note that the home continued to be occupied and maintained by the plaintiff remains a fit and proper home for Mr. Hibshman and his children.

That the . . . townhome occupied by Ms. Hibshman, located in Simpsonville, is a three-bedroom, two and-a-half bath rental unit that she plans to move from and intends to remain within the children's school district upon the sale of the parties' marital home here in Rowan County.

That both parents have made formal . . . concrete steps toward investigating the appropriateness of the schools, and the Court finds that the school, the campus itself and the school system that the children would enroll in in Pennsylvania versus South Carolina are appropriate and would meet their best interest.

The Court does not find that this evidence supports any finding that Ms. Hibshman has moved to the State of South Carolina for the specific purpose of frustrating Mr. Hibshman's court-ordered custody and/or visitation. She has not moved for that purpose. In fact, I'll make a specific finding that securing a better job and the history that she has agreed on more visitation time is contrary to any position that she has relocated to frustrate Mr. Hibshman's court-ordered visitation and custody.

Mr. Hibshman's employment remains unchanged [and the] findings that were previously made remain the findings at this trial installment.

Ms. Hibshman's job has changed. The job with Carolina Mobility [is a] similar job but a position of management that includes a base salary, bonus, benefits, profit sharing, more flexible hours. She's been employed in this specific area of auto sales for 15 years. There are a limited number of dealerships that specialize in the sale of handicap-accessible vehicles.

Ms. Hibshman is in a relationship with Will Martinez, has been in that relationship for more than one year, live[d] with this man for the past seven months. Mr. Martinez is unemployed at this time and is seeking certification to pursue employment in insurance[.]

. . .

All right, so I'll say further, when we tried this case and I heard extensive evidence from each of you in July, . . . it was a close case in my estimation[, and] . . . [i]t's still a close case.

And so this is the Order of the Court. The motion to modify the custody order entered on September 5, 2008 is granted. I find that the best interest will be served by placing primary custody during the school year with the plaintiff, Mr. Hibshman and primary custody during the summer months with the defendant, Ms. Hibshman.

On 21 October 2009, the trial court entered an order, consistent with the statements that it made in open court, changing primary custody of the children from Defendant to Plaintiff. In the preamble to its order, the trial court stated that:

The subject of this hearing is a Motion for Change of Custody filed by the Plaintiff on July 17, 2009 invoking paragraph seven of the decree of the July 15, 2008 order that stated "Defendant's primary custody of the children during the school year is conditioned on Defendant maintaining a home in the Granite Quarry Elementary school district while the children are still in elementary school. If she does not, this court may receive additional evidence and this order [may be] modified without a showing of a substantial change in circumstances." This matter comes on for a modification of the order that was entered on September 5, 2008

following a trial that occurred on July 15, 2008 by stipulation of the parties and consistent with the order language mentioned above the court hereby convened this hearing for a best interest determination despite the existence of a custody order previously entered.

After making findings of fact that were essentially identical to those announced in open court, the trial court concluded as a matter of law that:

1.  That the Court has jurisdiction over the subject matter and the parties of this action.

2.  That both Plaintiff and Defendant are fit and proper persons to exercise care, custody and control of the minor children.

3.  That it is in the best interest of the minor children that custody be modified to provide that the Plaintiff, Mr. Hibshman, have primary custody during the school year and the Defendant, Ms. Hibshman having primary custody during the summer.

4.  That it is in the best interest of the minor children that the remaining specific periods with the non-custodial parent remain as they were under the prior order.

Based on these findings and conclusions, the trial court granted Plaintiff primary custody of the children during the school year. Defendant noted an appeal to this Court from the trial court's orders.

## II. Legal Analysis

### A. Standard of Review

According to N.C. Gen. Stat. § 50-13.7(a), "an order of a court of this State for custody of a minor child may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested."

The trial court has the authority to modify a prior custody order when a substantial change in circumstances has occurred, which affects the child's welfare. The party moving for modification bears the burden of demonstrating that such a change has occurred. The trial court's order modifying a previous custody order must contain findings of fact, which are supported by substantial, competent evidence. "The trial court is vested with broad discretion in cases involving child custody," and its decision will not be reversed on appeal absent a clear showing of

abuse of discretion. In determining whether a substantial change in circumstances has occurred[, "c]ourts must consider and weigh all evidence of changed circumstances which effect or will affect the best interests of the child, both changed circumstances which will have salutary effects upon the child and those which will have adverse effects upon the child. In appropriate cases, either may support a modification of custody on the ground of a change in circumstances."

*Karger v. Wood*, 174 N.C. App. 703, 705-06, 622 S.E.2d 197, 200 (2005) (citing *Shipman v. Shipman*, 357 N.C. 471, 473-74, 586 S.E.2d 250, 253 (2003), and quoting *Pulliam v. Smith*, 348 N.C. 616, 619, 624-25, 501 S.E.2d 898, 899, 902 (1998)), appeal dismissed, 360 N.C. 481, 630 S.E.2d 665 (2006). As a result, "once the custody of a minor child is judicially determined, that order of the court cannot be modified until it is determined that (1) there has been a substantial change in circumstances . . . affecting the welfare of the child; and (2) a change in custody is in the best interest of the child." *Dobos v. Dobos*, 111 N.C. App. 222, 226, 431 S.E.2d 861, 863 (1993) (quoting *Ramirez-Barker v. Barker*, 107 N.C. App. 71, 77, 418 S.E.2d 675, 678 (1992), *disapproved on other grounds by Pulliam*. 348 N.C. at 620, 501 S.E.2d at 900), *disapproved on other grounds by Pulliam, id.*

This Court has held that "the trial court commit[s] reversible error by modifying child custody . . . absent any finding of substantial change of circumstances affecting the welfare of the child." *Jackson v. Jackson*, 192 N.C. App. 455, 459, 665 S.E.2d 545, 548 (2008). *See also, e.g., Lewis v. Lewis*, 181 N.C. App. 114, 118, 638 S.E.2d 628, 631 (2007) (holding that "it was error for the court to modify the existing consent order as to custody when it concluded, at the same time, that there had not been any substantial change in circumstances."). "A determination of whether there has been a substantial change of circumstances is a legal conclusion, which must be supported by adequate findings of fact." *Armstrong v. Droessler*, 177 N.C. App. 673, 678, 630 S.E.2d 19, 22-23 (2006) (citing *Garrett v. Garrett*, 121 N.C. App. 192, 197, 464 S.E.2d 716, 720 (1995), *disapproved of on other grounds by Pulliam, id.*).

[B]efore a child custody order may be modified, the evidence must demonstrate a connection between the substantial change in circumstances and the welfare of the child, and flowing from that prerequisite is the requirement that the trial court make findings of fact regarding that connection. . . . [Where] the effects of

the change on the welfare of the child are not self-evident and therefore necessitate a showing of evidence directly linking the change to the welfare of the child[,] . . . our appellate courts have required a showing of specific evidence linking the change in circumstances to the welfare of the child.

*Shipman*, 357 N.C. at 478, 586 S.E.2d at 255-56 (citing *Carlton v. Carlton*, 145 N.C. App. 252, 262, 549 S.E.2d 916, 923 (Tyson, J., dissenting), *rev'd per curiam per dissent*, 354 N.C. 561, 557 S.E.2d 529 (2001), *cert. denied*, 536 U.S. 944, 153 L. Ed. 2d 811, 122 S. Ct. 2630 (2002)) (other citation omitted).

### B. Substantial Change of Circumstance

On appeal, Defendant argues that the trial court erred by failing to determine whether a substantial change of circumstances justified changing the custody of the minor children. Defendant claims that the trial court was required to demonstrate the existence of a substantial change in circumstances before changing primary custody of the children from Defendant to Plaintiff and that the "changed circumstances" requirement could not be lawfully waived by either party or omitted by the trial court. We believe that Defendant's argument has merit.

The record clearly demonstrates that the trial court's initial custody order rested on a conclusion that it was in the children's best interest for Defendant to have primary custody, with this determination "conditioned on [her] maintaining a home in the Granite Quarry Elementary School district, while the children are still in elementary school." The trial court's initial custody order further provided that, if Defendant failed to remain a resident of the Granite Quarry school zone, the trial court "may receive additional evidence and this order may be modified without a showing of a substantial change in circumstances," with a handwritten notation near this provision indicating that Defendant consented to its inclusion. At the second custody hearing, the trial court explicitly stated that it was not considering whether a substantial change of circumstances warranting a change in custody had occurred, with this determination resting on the waiver provision contained in the original custody order.

The extent to which the trial court was authorized to order a change in the custody of the minor children without a showing of changed circumstances in reliance on Defendant's stipulation hinges upon an analysis of the language and purpose of N.C. Gen. Stat.

§ 50-13.7, including the nature of the interest or interests protected by that statutory provision. The Supreme Court has observed that, "[u]nfortunately, child custody disputes are often hotly-contested, bitter affairs in which the innocent children in issue suffer as confused and unwilling pawns." *In re Custody of Peal,* 305 N.C. 640, 645, 290 S.E.2d 664, 667 (1982). N.C. Gen. Stat. § 50-13.7 checks this tendency toward contentious litigation by limiting the circumstances under which the custody of a child, once established, is subject to being changed. This Court has emphasized that:

> "The welfare of the child in controversies involving custody is the polar star by which the courts must be guided in awarding custody." "In a custody modification action, even one involving a parent, the existing child custody order cannot be modified [unless] . . . the party seeking a modification [first shows] that there has been a substantial change in circumstances affecting the welfare of the child[.]"[2]

*Warner v. Brickhouse,* 189 N.C. App. 445, 451, 658 S.E.2d 313, 317 (2008) (quoting *Thomas v. Thomas,* 259 N.C. 461, 467, 130 S.E.2d 871, 876 (1963), and *Johnson v. Adolf,* 149 N.C. App. 876, 878, 561 S.E.2d 588, 589 (2002)). In addition, the *Warner* Court noted that:

> Our Supreme Court articulated the following purpose for this rule: "A decree of custody is entitled to such stability as would end the vicious litigation so often accompanying such contests, unless it be found that some change of circumstances has occurred affecting the welfare of the child so as to require modification of the order. To hold otherwise would invite constant litigation by a dissatisfied party so as to keep the involved child constantly torn between parents and in a resulting state of turmoil and insecurity. This in itself would destroy the paramount aim of the court, that is, that the welfare of the child be promoted and subserved."

*Warner,* 189 N.C. App. at 451-52, 658 S.E.2d at 317-18 (quoting *Shepherd v. Shepherd,* 273 N.C. 71, 75, 159 S.E.2d 357, 361 (1968)).

---

2. "The statutory language does not use the word 'substantial' in describing change of circumstances nor does the statute use the phrase 'affecting the child's welfare.' Both 'substantial' and 'affecting the child's welfare' have been added by judicial decisions and represent a commonsense interpretation of the legislative intent." *Pulliam,* 348 N.C. at 629, 501 S.E.2d at 905 (Justice Orr, concurring). Thus, "under N.C. Gen. Stat. § 50-13.7(a), 'changed circumstances' means a 'substantial change of circumstances affecting the welfare of the child[.]' " *Correll v. Allen,* 94 N.C. App. 464, 468, 380 S.E.2d 580, 583 (1989) (citation omitted).

Finally, this Court has held that:

> Since, there is a statutory procedure for modifying a custody determination, a party seeking modification of a custody decree must comply with its provisions. There are no exceptions in North Carolina law to the requirement that a change in circumstances be shown before a custody decree may be modified.

(emphasis added). *Bivens v. Cottle*, 120 N.C. App. 467, 469, 462 S.E.2d 829, 831 (1995), *disc. review improvidently granted, appeal dismissed*, 346 N.C. 270, 485 S.E.2d 296 (1997). As a result, according to well-established North Carolina law, the "requirement of substantial change is an effort to lend 'such stability as would end the vicious litigation so often accompanying such contests[.]' " *Ellenberger v. Ellenberger*, 63 N.C. App. 721, 724, 306 S.E.2d 190, 191 (1983) (quoting *Shepherd* 273 N.C. at 75, 159 S.E.2d at 361), *rev'd in part on other grounds*, 309 N.C. 631, 308 S.E.2d 714 (1983). For that reason, a "court's discretion in child custody and visitation cases is limited by the well[-]established legal standard for modification of custody and, visitation orders." *Benedict v. Coe*, 117 N.C. App. 369, 378, 451 S.E.2d 320, 325 (1994), *disapproved of on other grounds by Pulliam, id.*

"Waiver is 'an intentional relinquishment or abandonment of a known right or privilege.' Almost any right may be waived, so long as the waiver is not illegal or contrary to public policy." *Medearis v. Trustees of Meyers Park Baptist Church*, 148 N.C. App. 1, 10, 558 S.E.2d 199, 206 (2001) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023 (1938), overruled in part on other grounds by *Edwards v. Arizona*, 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981), and citing *Clement v. Clement*, 230 N.C. 636, 639, 55 S.E.2d 459, 461 (1949)), *disc. review denied*, 355 N.C. 493, 563 S.E.2d 190 (2002). A careful analysis of the language of N.C. Gen. Stat. § 50-13.7, coupled with statements made in numerous cases interpreting its provisions, inevitably leads us to the conclusion that (1) the requirement set out in N.C. Gen. Stat. § 50-13.7 to the effect that a child custody order may only be modified upon a proper showing, is not a personal right possessed by a litigant, but is instead a legislatively mandated limitation on the authority of the courts to modify prior custody orders and that, (2) if the necessity to show a substantial change of circumstances were to be treated as an individual right possessed by a parent rather than as a rule intended to protect the affected child, such an interpretation would be completely inconsistent with the clear emphasis of the Supreme Court and this Court

upon the purposes served by the "changed circumstances" requirement. As a result, we conclude that Defendant did not have the ability to "waive" the requirement that the trial court find a substantial change in circumstance before modifying a prior custody order, so that the trial court erred by failing to address the "changed circumstances" issue at the time that it awarded Plaintiff custody of the parties' children.[3]

### III. Conclusion

Thus, for the reasons discussed above, we conclude that the trial court erred by changing the custody of the minor children, without first determining that there had been a substantial change of circumstances. Having reached this result, we need not address Defendant's remaining challenges to the trial court's order. As a result, the trial court's order is reversed and this matter is remanded to the Rowan County District Court for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

Judges BRYANT and STEELMAN concur.

---

3. The same logic renders Plaintiff's reliance on the doctrine of equitable estoppel unavailing. Although the doctrine of equitable estoppel exists to prevent "a party from asserting a legal claim or defense which is contrary to or inconsistent with his prior actions or conduct," *Godley v. County of Pitt*, 306 N.C. 357, 360, 293 S.E.2d 167, 169 (1982), for the purpose of " 'protect[ing] the integrity of the courts and the judicial process,' " *Gore v. Myrtle/Mueller*, 362 N.C. 27, 33, 653 S.E.2d 400, 405 (2007), quoting *State v. Taylor*, 128 N.C. App. 394, 400, 496 S.E.2d 811, 815, *aff'd per curiam*, 349 N.C. 219, 504 S.E.2d 785 (1998), and "promot[ing] fairness between the parties," *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 17, 591 S.E.2d 870, 881 (2004), we do not believe that the conduct of one person can equitably estop the effectuation of legal principles intended to protect someone else. Since, as we have noted in the text, the purpose of the "changed circumstances" requirement is to protect the child rather than the parents, we do not believe that the doctrine of equitable estoppel can be invoked to justify upholding the trial court's decision to refrain from making the required "changed circumstances" determination.