IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-960

Filed 1 April 2026

Yadkin County, No. 20CVD000705-980

MARTY LEN HYLEMON, Plaintiff,

v.

SHELBY JACQUELINE GROSSOEHME, Defendant.

Appeal by Defendant from order entered 20 March 2025 by Judge William F. Brooks in Yadkin County District Court. Heard in the Court of Appeals 10 March 2026.

*Spidell Family Law, by Harvey W. Barbee, Jr., for Defendant-Appellant.*

*J. Clark Fischer for Plaintiff-Appellee.*

COLLINS, Judge.

This appeal arises from a child custody dispute between Plaintiff, Marty Len Hylemon, and Defendant, Shelby Jacqueline Grossoehme. Defendant appeals from the trial court's Final Custody Order, arguing the following: (1) The trial court erred by finding that the order before it was temporary and thus the best interests of the child standard applied. (2) The trial court erred by modifying a permanent child custody order without finding a substantial change of circumstances. (3) The trial court erred by failing to award Defendant reasonable visitation rights where its conclusion is not supported by the findings of fact. We agree with Defendant's first

two arguments and do not reach the third. We thus vacate the Final Custody Order and remand the matter to the trial court for further proceedings.

## I. Background

Plaintiff and Defendant married in February 2020 and separated in May 2020. Their son, David,[1] was born in December 2020. Plaintiff filed a complaint for child custody and a motion for an ex parte child custody order on 22 December 2020. Plaintiff alleged that Defendant had prohibited him from seeing their child and had threatened to leave the jurisdiction. An ex parte order was entered the next day, prohibiting Defendant from removing the child from North Carolina pending further hearing.

The parties consented to a temporary custody order memorialized in a memorandum of order entered 9 March 2021. The order declared Plaintiff to be David's biological father and allowed Plaintiff weekly, one-hour visits with the child. The parties consented to a second temporary custody order memorialized in a memorandum of order entered 10 May 2021. The order allowed Plaintiff weekly, two-hour visits at a supervised visitation facility. A supplemental consent order memorialized in a memorandum of order entered 11 May 2021 allowed Plaintiff's mother to also attend the visits.

---

[1] A pseudonym is used.

The parties consented to a third temporary custody order entered 9 August 2021. The order allowed Plaintiff weekly, four-hour visits at his mother's residence and required Plaintiff to take a drug test. The parties consented to a fourth temporary custody order entered 13 December 2021. The order allowed Plaintiff additional holiday visits.

The parties consented to a fifth temporary custody order memorialized in a memorandum of order entered 22 February 2022. The order provided for the parties to have joint legal custody of David with Defendant having primary physical custody and Plaintiff having secondary physical custody on a graduated schedule. The order provided that it was to be reviewed after eight months at a regularly scheduled court session. The memorandum of order was memorialized by order entered 24 March 2022.

Plaintiff moved for ex parte emergency custody of David on 26 September 2022, alleging that Defendant intended to move to Ohio with a new male friend, had already left for Ohio, and David was "in imminent danger of serious bodily injury." An order for ex parte emergency custody was entered that day, granting Plaintiff temporary sole legal and physical custody of David. A warrant was issued directing law enforcement to take custody of David and place him with Plaintiff.

Defendant filed a motion to show cause on 10 October 2022, alleging Plaintiff was withholding David from her.

After a hearing on Plaintiff's complaint for custody and Defendant's motion to show cause, the trial court entered a temporary custody order[2] on 17 November 2022 ("17 November 2022 temporary order"). The order concluded that Plaintiff was not in contempt of court, and it was in David's best interests for the parties to have joint legal custody and Plaintiff to have primary physical custody. The court ordered "secondary custody/visitation" to Defendant every other Saturday and Sunday for four hours, three hours on David's birthday, and four hours on Christmas Eve. The court further ordered, "[D]efendant's visitation shall be reviewed at the undersigned's April [2022[3]] session of Yadkin County Civil District Court. The issue of custody is not to be reviewed at this date."

On 3 April 2023, the matter was continued to 8 May 2023. A memorandum of order was entered on 8 May 2023, modifying Defendant's weekend visitation to every other Saturday for six hours and every other Sunday for five hours. The order further provided, "Visitation shall be reviewed at the undersigned's August 2023 civil date in Yadkin County."

A memorandum of order was entered 7 August 2023, modifying Defendant's weekend schedule to every other Saturday and every other Sunday for six hours. The

---

[2] Despite the order's label – "Permanent Child Custody Order" – the parties do not disagree that this order was temporary.

[3] This is a typographical error as the matter was set for review at the April *2023* session.

order further provided, "Visitation shall be reviewed at the undersigned's December 2023 civil date in Yadkin County."

After a hearing, the court entered a Permanent Order on Visitation on 4 December 2023 ("4 December 2023 permanent order"), wherein the court found "no reason to further modify the [D]efendant's visitation as set out in the prior orders[.]" The court thus ordered,

> [D]efendant's secondary physical custody/visitation as set out in the [17 November 2022 temporary order[4]], and modified and expanded in subsequent orders entered May 8, 2023 and August 7, 2023, shall be the permanent order of this [c]ourt, subject to modification only upon the filing of a motion alleging a substantial change in circumstances affecting the welfare of the minor child and an order of this [c]ourt finding such a substantial change[.]

Defendant filed an ex parte motion for temporary emergency custody approximately a year later, on 9 December 2024, alleging Plaintiff had violated the prior court orders by not allowing her to have her regular custodial time. The ex parte motion was denied by order entered that day. The order also indicates that the matter was set for a hearing on emergency custody on 16 December 2024 at 9:00 a.m. The record is silent as to whether a hearing on emergency custody was held.

On 16 December 2024, Defendant filed a motion to modify custody, alleging Plaintiff had violated the prior court orders by not allowing her to have her regular

---

[4] The order refers to "the permanent child custody order entered herein on August 17, 2022[.]" This is a typographical error because the temporary order labeled "Permanent Child Custody Order" was entered 17 *November* 2022.

custodial time and requesting that she be allowed to have visitation with David at her home in Virginia, and a motion to show cause. A hearing on both motions was set for 6 January 2025.

The matter appears to have been continued until 24 February 2025, when Defendant's motions came on for hearing. By Final Custody Order entered 20 March 2025, the court found, in relevant part, as follows:

> 7. On November 16, 2022, a Temporary Custody Order was entered. On August 7, 2023, an order expanding visitations for Defendant was entered. Said Order included that Defendant's visitation would be reviewed by the [c]ourt during the December 2023 Civil Session;
>
> 8. On December 2, 2024, the [c]ourt continued the review of visits to February 24, 2025 to Judge Brooks' February court date to be set by the Trial Coordinator. . . . ;
>
> 9. On December 9, 2024, the Defendant filed a Motion for an ex parte emergency order, which was denied by the [c]ourt;
>
> 10. On December 16, 2024, the Defendant filed a Motion to Modify, requested an ex parte emergency order, and filed a Motion for Contempt against the Plaintiff. The Honorable Robert Crumpton continued these matters for service until January 6, 2025;
>
> 11. On January 6, 2025, the Show Cause Motion and Motion to Modify were continued to February 24, 2025 with the Final Review Hearing;
>
> 12. On February 24, 2025, the matters before the [c]ourt included a Final Review Hearing regarding the custody arrangement of the parties. Additionally pending also included Defendant's Motion to Show Cause and Motion to Modify Custody;
>
> 13. The minor child has expressed that he does not feel comfortable around Defendant's husband, James Huber;

14. The minor child has experienced trauma, and currently sees counselor Brittany Todd at Be Balanced Counseling and Wellness in Winston-Salem, North Carolina;

15. Brittany Todd is qualified as an expert witness in Child Custody Evaluations and as a Forensic Mental Health Counselor and Evaluator;

16. The [c]ourt is extremely concerned for the minor child's health and well-being when around Defendant and especially Defendant's husband, James Huber;

. . . .

20. The concern after the first counseling meeting with the minor child signaled indications that the minor child has been sexually abused;

. . . .

34. Defendant husband, James Huber, has admitted that in the past he did masturbate in a car with his children present in the back seat, and that when children sat on his lap, it aroused him;

35. In . . . Ohio order (21-DR-01-231), Mr. Huber was court-ordered to obtain a psychosexual evaluation, but never completed this;

36. Further, Mr. Huber was court-ordered to complete parenting classes and enroll in individual counseling, but also refused to do so;

. . . .

51. The [c]ourt is concerned with any contact between James Huber and the minor child;

52. The [c]ourt finds that it would be derelict and neglectful if custody and visitations were granted to the Defendant at this time[.]

Upon its findings, the court concluded, in relevant part, as follows:

2. That as the matter was temporary in nature before February 24, 2025, the standard is the best interests of the minor child;

3. That even if the August 7, 2023 order was considered a Final Order, no substantial change of circumstances has occurred that affects the welfare of the minor child;

. . . .

5. Plaintiff and Defendant are fit and proper to exercise joint legal custody of the minor child, and such is in the best interests of the minor child;

6. Plaintiff is fit and proper to exercise primary physical custody of the minor child, and such is in the best interests of the minor child;

7. Defendant is not [a] fit and proper person to have physical custody of the minor child, and such is in the best interests of the minor child . . . .

Upon its conclusion, the court ordered, in relevant part, as follows:

1. Defendant's Motion to Modify Custody is denied as there has been no substantial change of circumstances that affects the welfare of the minor child;

2. Defendant's Motion for Contempt is denied;

3. The parties shall share joint legal custody of the minor child . . . .

. . . .

5. The Plaintiff shall continue to exercise primary physical custody of the minor child . . . .

6. There shall be no contact or visitations between the minor child and Defendant's husband, James Huber[,] which shall include physical contact or any communication during FaceTime calls;

7. Defendant shall be entitled to Facetime telephone calls with the minor child every Tuesday and Thursday at 5:00 pm and these calls shall not include James Huber;

8. The counselor for the minor child may establish a visitation session between the Defendant and the minor child only to try to establish a bond back with [Defendant] and child. . . . ;

9. Defendant shall not have any unsupervised physical custody of the minor child. However, if therapeutically recommended by the minor child's counselor, the Defendant may have a weekly two-hour visitation . . . ;

10. Mr. James Huber is not to be present at all for visits with Defendant while in person or on any Facetime calls;

11. This settles all matters of child custody before the [c]ourt . . . .

Defendant appealed.

## II. Discussion

Defendant argues the following: (1) The trial court erred by concluding that "the matter was temporary in nature before February 24, 2025" and thus that "the standard is the best interests of the minor child[.]" (2) The trial court erred by modifying the 4 December 2023 permanent order without finding a substantial change of circumstances. (3) The trial court erred by failing to award Defendant reasonable visitation rights where its conclusion is not supported by the findings of fact.

## A. Temporary versus permanent order

"[W]hether an order is temporary or permanent in nature is a question of law, reviewed on appeal de novo." *Smith v. Barbour*, 195 N.C. App. 244, 249 (2009) (citation omitted). Generally "an order is temporary if either (1) it is entered without prejudice to either party, (2) it states a clear and specific reconvening time in the order and the time interval between the two hearings was reasonably brief; or (3) the order does not determine all the issues." *Senner v. Senner*, 161 N.C. App. 78, 81

(2003) (citations omitted). "A trial court's designation of an order as 'temporary' or 'permanent' is neither dispositive nor binding on an appellate court." *Woodring v. Woodring*, 227 N.C. App. 638, 643 (2013) (citation omitted).

Here, the trial court made the following relevant findings:

> 7. On November 16, 2022, a Temporary Custody Order was entered. On August 7, 2023, an order expanding visitations for Defendant was entered. Said Order included that Defendant's visitation would be reviewed by the [c]ourt during the December 2023 Civil Session;
>
> 8. On December 2, 2024, the [c]ourt continued the review of visits to February 24, 2025 to Judge Brooks' February court date to be set by the Trial Coordinator. Regina R. Gillespie was recently retained for Plaintiff.
>
> . . . .
>
> 11. On January 6, 2025, the Show Cause Motion and Motion to Modify were continued to February 24, 2025 with the Final Review Hearing;
>
> 12. On February 24, 2025, the matters before the [c]ourt included a Final Review Hearing regarding the custody arrangement of the parties. Additionally pending also included Defendant's Motion to Show Cause and Motion to Modify Custody[.]

Finding 7 is fairly accurate: It first finds, "On November 16, 2022, a Temporary Custody Order was entered." A more accurate finding would state, "On November 17, 2022, a temporary custody order was entered." Finding 7 omits that an order expanding Defendant's visitation was entered on 8 May 2023 but accurately finds that another order expanding Defendant's visitation was entered on 7 August 2023.

Finally, Finding 7 accurately finds that Defendant's visitation would be reviewed by the court during the December 2023 civil session.

However, it is apparent from the findings of fact, the transcript of the 24 February 2025 hearing, and the court's conclusion 3 which indicates it reviewed "the August 7, 2023 order," that the court erroneously overlooked that Defendant's visitation was reviewed during the December 2023 civil session and that the court entered the 4 December 2023 permanent order. That order states:

> [D]efendant's secondary physical custody/visitation as set out in the [17 November 2022 temporary order], and modified and expanded in subsequent orders entered May 8, 2023 and August 7, 2023, shall be the permanent order of this [c]ourt, subject to modification only upon the filing of a motion alleging a substantial change in circumstances affecting the welfare of the minor child and an order of this [c]ourt finding such a substantial change[.]

This 4 December 2023 permanent order, which incorporates the 17 November 2022 temporary order and the subsequent orders modifying Defendant's visitation, was in effect at the 24 February 2025 hearing and remained in effect until entry of the Final Custody Order on 20 March 2025.

Finding 8 is unsupported by the record, as nothing in the record indicates that the court on 2 December 2024 "continued the review of visits to February 24, 2025[.]" The court decided custody by the 4 December 2023 permanent order. Furthermore, Findings 12 and 13 are unsupported to the extent they find a "Final Review Hearing" regarding custody was before the court on 24 February 2025.

Because the custody order before the trial court at the 24 February 2025 hearing was the 4 December 2023 permanent order, the trial court erred by finding "the matter was temporary in nature before February 24, 2025" and thus that "the standard is the best interests of the minor child[.]"

## B. Substantial change of circumstances

Defendant next argues that trial court erred by modifying the 4 December 2023 permanent order without finding a substantial change of circumstances.

"[O]nce the custody of a minor child is judicially determined, that order of the court cannot be modified until it is determined that (1) there has been a substantial change in circumstances . . . affecting the welfare of the child; and (2) a change in custody is in the best interest of the child." *Hibshman v. Hibshman*, 212 N.C. App. 113, 121 (2011) (citations omitted). "[T]he trial court commit[s] reversible error by modifying child custody . . . absent any finding of substantial change of circumstances affecting the welfare of the child." *Id.* (citation omitted); *see, e.g.*, *Lewis v. Lewis*, 181 N.C. App. 114, 118 (2007) (holding "it was error for the court to modify the existing consent order as to custody when it concluded, at the same time, that there had not been any substantial change in circumstances").

Here, the court made no findings as to whether there had been a substantial change of circumstances between the time the 4 December 2023 permanent order was entered and the 24 February 2025 hearing. The court concluded, however, in relevant part:

2. That as the matter was temporary in nature before February 24, 2025, the standard is the best interests of the minor child;

3. That even if the August 7, 2023 order was considered a Final Order, no substantial change of circumstances has occurred that affects the welfare of the minor child[.]

As analyzed in Section A, the trial court erred by concluding "the matter was temporary in nature before February 24, 2025" and thus that "the standard is the best interests of the minor child[.]"

The trial court concluded, in the alternative, that "no substantial change of circumstances has occurred that affects the welfare of the minor child" and ordered, "Defendant's Motion to Modify Custody is denied as there has been no substantial change of circumstances that affects the welfare of the minor child[.]" Nonetheless, the trial court modified Defendant's visitation as set forth in the 4 December 2023 permanent order by restricting her contact with David to Facetime calls twice a week; a therapeutic visit to re-establish a bond between Defendant and David; and, if therapeutically recommended, supervised visits. "[I]t was error for the court to modify" the 4 December 2023 permanent order "when it concluded, at the same time, that there had not been any substantial change in circumstances." *Lewis*, 181 N.C. App. at 118.

In light of the above conclusions, we do not reach Defendant's argument that the trial court erred by failing to award her reasonable visitation rights where its conclusion is not supported by the findings of fact.

### III.   Conclusion

The trial court erred by finding "the matter was temporary in nature before February 24, 2025" and thus that "the standard is the best interests of the minor child." The trial court further erred by modifying the 4 December 2023 permanent order when it concluded "no substantial change of circumstances has occurred that affects the welfare of the minor child[.]" We vacate the Final Custody Order and remand the matter for further proceedings.

VACATED AND REMANDED.

Chief Judge DILLON and Judge ZACHARY concur.