TARA WARNER, PLAINTIFF v. JASON BRICKHOUSE AND DEBORAH BRICKHOUSE
(CHATHAM), DEFENDANTS

No. COA07-640

(Filed 1 April 2008)

### 1. Appeal and Error— preservation of issues—sufficiency of notice of appeal

Although plaintiff mother contends the trial court erred in a child custody case by denying her motion to modify custody even though she was never deemed unfit in the order that awarded custody to the paternal grandmother, this issue is dismissed because: (1) N.C. R. App. P. 3 requires a notice of appeal to designate the judgment or order from which appeal is taken as well the court to which appeal is taken; (2) although plaintiff properly filed a timely notice of appeal to the Court of Appeals, the notice failed to make any reference to the order entered by the district court on 15 January 2004 that terminated the mother's visitation and awarded custody to the grandmother; (3) plaintiff sought to gain custody of the minor child by filing a motion to modify the 15 January 2004 order based on a material and substantial change of circumstances; and (4) a notice of appeal from denial of a motion to modify a judgment does not also specifically appeal the underlying judgment.

### 2. Child Support, Custody, and Visitation— modification— substantial change in circumstances standard

The trial court did not err in a child custody case by applying the substantial change in circumstances standard when denying plaintiff mother's motion to modify custody even though she was never deemed unfit in the order that awarded custody to the paternal grandmother because: (1) there are no exceptions in North Carolina law to the statutory requirement under N.C.G.S. § 50-13.7(a) that a change in circumstances be shown before a custody decree may be modified; and (2) this case was not an ini-

tial custody proceeding, plaintiff did not appeal from the initial custody order entered 15 January 2004, and plaintiff filed a motion on 17 March 2005 to modify the 2004 order based on a material and substantial change in circumstances.

**3. Child Support, Custody, and Visitation— modification—failure to show effect of substantial change in circumstances**

The trial court did not err in a child custody case by finding that plaintiff mother failed to meet her burden of showing the substantial change in circumstances standard because:.(1) although the trial court found the minor child suffered from severe developmental delays, evidence was presented that the child was receiving the recommended medical and therapeutic treatments she needed to aid in her development while in her paternal grandmother's custody; (2) evidence was presented that the minor child was an energetic loving child who showed incremental progress in her development under the care and supervision of medical and educational personnel while in the custody of the grandmother; (3) although the fact that plaintiff has not been able to demonstrate the effect that the changed circumstances in her own personal life and environment might have on the minor child was based largely on the fact that she had been ordered to have no contact with the minor child, and even though the grandmother purposefully withheld gifts to the child from plaintiff, the moving party has the burden of proving a nexus between the changed circumstances and the welfare of the child in order for the trial court to determine that a child support order may be modified; and (4) plaintiff failed to present evidence that her substantial change in circumstances affected the minor child.

Appeal by plaintiff from judgment entered 16 January 2007 by Judge Jimmy L. Love, Jr. in Johnston County District Court. Heard in the Court of Appeals 4 February 2008.

*Mast, Schulz, Mast, Johnson & Wells, P.A., by George B. Mast, Bradley N. Schulz, and Ron L. Trimyer, Jr., for plaintiff-appellant.*

*No brief, for defendants-appellees.*

*Kristoff Law Offices, P.A., by Sharon H. Kristoff, Guardian Ad Litem.*

MARTIN, Chief Judge.

D.L.B. was born on 19 December 1997 to plaintiff Tara Warner ("mother") and defendant Jason Brickhouse ("father"). Mother and father lived with father's mother, defendant Deborah Brickhouse (Chatham) ("grandmother"), after D.L.B.'s birth. Mother, who has a learning disability, communication difficulties, and "a bit of a speech impediment," asserted that grandmother "took over the role of mother" to D.L.B. after she was born and "would not allow [mother] to assist with feeding or caring for the baby." On 19 December 1998, mother and father ended their relationship and mother moved out of grandmother's house. Mother did not take D.L.B. with her. After she moved out of grandmother's residence, mother asserted that grandmother would "not allow [her] to have any contact at all with the minor child." Mother filed a complaint with the Johnston County District Court on 13 January 1999 seeking custody of and support for D.L.B. On 11 October 1999, the district court entered an agreement between the parties granting mother visitation with D.L.B. at grandmother's house during specified days and times. Although visitation was ordered to occur at grandmother's house, neither child support nor permanent custody were addressed in the order.

On 14 April 2000, mother moved the court to increase visitation with D.L.B. in part because father had moved out of grandmother's house and was "no longer residing with the minor child." The court granted mother's motion on 11 May 2000. On 16 August 2000, mother moved the court to increase visitation again to include Thanksgiving, Christmas, Easter, and Mother's Day. On 3 October 2000, the court granted "some day visitation" with D.L.B. on Thanksgiving, Christmas, and Easter. On 12 April 2001, mother filed a motion to relocate the site of exchange for visitation from grandmother's house to the Benson Police Department due to "a violent altercation" between grandmother and D.L.B.'s maternal grandmother. Mother alleged she and her own mother were "in fear for their safety." On 25 July 2003, mother's motion was involuntarily dismissed without prejudice pursuant to Rule 41(b) for mother's failure to appear at the hearing.

On 21 September 2003, mother moved the court for increased visitation and prayed that the site of exchange be moved to a public place. In this motion, mother alleged in part that grandmother relocated with D.L.B. without notifying mother of their new address or phone number and "deliberately kept the minor child from [her]." On

14 October 2003, grandmother moved to terminate mother's visitation with D.L.B.

On 15 January 2004, the district court entered a Custody and Visitation Order in which it found that mother "neglected to exercise her visitations for a period of at least two years." However, the court also found that this two-year "absence" occurred during the time when mother could not locate grandmother after she (grandmother) relocated with D.L.B. The court found that, while mother "did make some efforts to locate [grandmother,] . . . these efforts were minimal based upon the lack of visitation over the past two years with a vast number of alternatives available to have remedied this problem before two years have past [sic]." The court did not make a specific finding regarding mother's fitness as a parent, but instead concluded that "[t]he best interest of [D.L.B.] would be served" by awarding custody to grandmother, "would not be served" by allowing visitation with mother, and concluded that grandmother was "a fit and proper person to maintain the custody, care and control of the minor child." The court awarded custody of D.L.B. to grandmother and ordered that mother not have "any form of visitation or contact with the minor child." Mother did *not* appeal from this order.

On 17 March 2005, mother moved to gain custody of D.L.B. due to a material and substantial change in circumstances, and moved the court to appoint a guardian ad litem for D.L.B. Mother's motion to appoint a guardian ad litem was granted on 5 May 2005. On 16 January 2007, District Court Judge Jimmy L. Love, Jr. entered an order denying mother's motion for custody and dismissing the matter with prejudice. In that order, the court found that "[t]here is evidence from which this Court can find [mother] has experienced substantial circumstantial changes in her own personal life and environment[,] however there is no evidence put forth to show effect on the child whether positive or negative." On 24 January 2007, mother filed her notice of appeal to this Court from the order entered 16 January 2007.

I.

[1] Mother first contends that, in its 15 January 2004 order, the trial court erred by awarding custody to grandmother over mother without first finding that mother was unfit. For the reasons discussed below, this argument is not properly before us and we may not consider it.

"Any party entitled by law to appeal from a judgment or order of a superior or district court rendered in a civil action or special

proceeding may take appeal by filing notice of appeal with the clerk of superior court . . . ." N.C.R. App. P. 3(a) (2008). "The notice of appeal required to be filed and served by subdivision (a) of this rule . . . *shall designate the judgment or order from which appeal is taken* and the court to which appeal is taken . . . ." N.C.R. App. P. 3(d) (emphasis added).

"Appellate Rule 3 requirements for specifying judgments are jurisdictional in nature." *Von Ramm v. Von Ramm*, 99 N.C. App. 153, 158, 392 S.E.2d 422, 425 (1990). " '[J]urisdiction cannot be conferred by consent, waiver, or estoppel[;] . . . [j]urisdiction rests upon the law and the law alone.' " *Id.* (first and third alterations in original) (quoting *Feldman v. Feldman*, 236 N.C. 731, 734, 73 S.E.2d 865, 867 (1953)). "As such, the appellate court obtains jurisdiction only over the rulings specifically designated in the notice of appeal as the ones from which the appeal is being taken." *Craven Reg'l Med. Auth. v. N.C. Dep't of Health & Human Services*, 176 N.C. App. 46, 59, 625 S.E.2d 837, 845 (2006) (internal quotation marks omitted). "Without proper notice of appeal, this Court acquires no jurisdiction." *Von Ramm*, 99 N.C. at 156, 392 S.E.2d at 424 (internal quotation marks omitted).

In the present case, mother properly filed a timely notice of appeal to this Court from "the Order entered in open court by the Honorable Jimmy L. Love, Jr., District Court Judge Presiding at the December 22, 2006 Session of the District Court of Johnston County, and filed with the Johnston County District Court on January 16, 2007." The Notice of Appeal made no reference to the order entered by the district court on 15 January 2004 in which mother's grant of visitation with D.L.B. was terminated and custody was awarded to grandmother. The record indicates that, rather than file a timely notice of appeal to this Court from the 15 January 2004 order, mother instead sought to gain custody of D.L.B. by filing a motion to *modify* the 15 January 2004 order based on a material and substantial change in circumstances. However, in her Assignments of Error 1 and 3 in the record before this Court, mother attempts to direct our attention to errors arising out of the 15 January 2004 order. In other words, mother asks this Court to review errors she contends arise out of an order *not* included in the Notice of Appeal.

Applying the principle stated in *Von Ramm* to the present case, we conclude that a "[n]otice of appeal from denial of a motion to . . . [modify] a judgment which *does not also specifically appeal the*

*underlying judgment* does not properly present the underlying judgment for our review." *See id.* (emphasis added). Thus, we must dismiss these assignments of error.

II.

[2] Mother next contends that the trial court erred by applying the "substantial change in circumstances" standard when denying her motion to modify custody because mother was never deemed "unfit" in the order that awarded custody to grandmother. We disagree.

"In *Petersen v. Rogers,* [337 N.C. 397, 445 S.E.2d 901 (1994),] our Supreme Court recognized that parents have a constitutionally protected right to the custody, care and control of their child, absent a showing of unfitness to care for the child." *Cantrell v. Wishon,* 141 N.C. App. 340, 342, 540 S.E.2d 804, 806 (2000); *see also Everette v. Collins,* 176 N.C. App. 168, 173 n.3, 625 S.E.2d 796, 799 n.3 (2006) ("In *Petersen,* the North Carolina Supreme Court found that in custody disputes between parents and third parties, parents have a constitutionally-protected paramount right to the custody, care, and control of their children."). However, this Court has stated that this presumption "only applies to an *initial* custody determination." *Brewer v. Brewer,* 139 N.C. App. 222, 229, 533 S.E.2d 541, 547 (2000) (emphasis added); *see also Bivens v. Cottle,* 120 N.C. App. 467, 468, 462 S.E.2d 829, 830 (1995) ("[I]n a custody dispute between a natural parent found to be a fit and proper parent who did not neglect the welfare of their child, and any third party excepting only the other natural parent, *the natural parent must prevail in an initial determination of child custody.*") (emphasis added), *appeal dismissed per curiam,* 346 N.C. 270, 485 S.E.2d 296 (1997).

To modify a child custody or support order, N.C.G.S. § 50-13.7(a) requires a "motion in the cause and a showing of changed circumstances by either party or anyone interested." N.C. Gen. Stat. § 50-13.7(a) (2007). This Court has held that, once the custody of a minor child is *"judicially determined,* that order of the court *cannot be modified until* it is determined that (1) there has been a substantial change in circumstances affecting the welfare of the child; and (2) a change in custody is in the best interest of the child." *Bivens,* 120 N.C. App. at 469, 462 S.E.2d at 831 (emphasis added) (internal quotation marks omitted); *see also Brewer,* 139 N.C. App. at 232, 533 S.E.2d at 548 (holding that a party must first show that "there has been a substantial change of circumstances affecting the welfare of the child[]" and then, based on the factual situation, may be entitled

to the *Petersen* presumption *or* will be subject to the "best interest of the child" standard). "There are no exceptions in North Carolina law to the [statutory] requirement that a change in circumstances be shown before a custody decree may be modified." *Bivens*, 120 N.C. App. at 469, 462 S.E.2d at 831.

"[T]he case at hand is not an initial custody proceeding and, in fact, [mother] did not appeal from . . . [the] initial custody order entered" on 15 January 2004. *See id.* at 469, 462 S.E.2d at 830. Instead, as discussed in Section I above, mother filed a motion on 17 March 2005 to modify the 2004 custody order based on a material and substantial change in circumstances. Since the custody of D.L.B. was judicially determined in 2004 and that order is not on appeal before this Court, we conclude that the trial court did not err by applying the "substantial change in circumstances" standard in its 16 January 2007 order denying mother's motion to modify the initial custody order.

## III.

[3] Mother finally contends that, if "substantial change in circumstances" was the proper standard to apply in the 16 January 2007 order, the trial court erred by not finding the standard was met. We must disagree.

"The welfare of the child in controversies involving custody is the polar star by which the courts must be guided in awarding custody." *Thomas v. Thomas*, 259 N.C. 461, 467, 130 S.E.2d 871, 876 (1963) (internal quotation marks omitted). "In a custody modification action, even one involving a parent, the existing child custody order cannot be modified [unless] . . . the party seeking a modification [first shows] that there has been a substantial change in circumstances *affecting the welfare of the child* . . . ." *Johnson v. Adolf*, 149 N.C. App. 876, 878, 561 S.E.2d 588, 589 (2002) (emphasis added). Our Supreme Court articulated the following purpose for this rule:

A decree of custody is entitled to such stability as would end the vicious litigation so often accompanying such contests, unless it be found that some change of circumstances has occurred affecting the welfare of the child so as to require modification of the order. To hold otherwise would invite constant litigation by a dissatisfied party so as to keep the involved child constantly torn between parents and in a resulting state of turmoil and insecurity. This in itself would destroy the paramount aim of the court, that is, that the welfare of the child be promoted and subserved.

*Shepherd v. Shepherd,* 273 N.C. 71, 75, 159 S.E.2d 357, 361 (1968). Thus, when considering a motion to modify child custody, "[t]he trial court must determine whether there was a change in circumstances *and then* must examine whether such a change affected the minor child." *Shipman v. Shipman,* 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003) (emphasis added). "If the trial court concludes either that a substantial change has not occurred or that a substantial change did occur but that it did not affect the minor child's welfare, the court's examination ends, and no modification can be ordered." *Id.* .

"[C]ourts must consider and weigh all evidence of changed circumstances which affect or will affect the best interests of the child, both changed circumstances which will have salutary effects upon the child and those which will have adverse effects upon the child." *Metz v. Metz,* 138 N.C. App. 538, 540, 530 S.E.2d 79, 81 (2000) (internal quotation marks omitted). Where "the effects of the change on the welfare of the child are not self-evident[, the moving party must show] . . . evidence *directly* linking the change to the welfare of the child." *Shipman,* 357 N.C. at 478, 586 S.E.2d at 256 (citing 3 Suzanne Reynolds, *Lee's North Carolina Family Law* § 13.103 (5th rev. ed. 2002)). "Evidence linking . . . [changed] circumstances to the child's welfare might consist of assessments of the minor child's mental well-being by a qualified mental health professional, school records, or testimony from the child or the parent." *Id.*

In the present case, the trial court found that "[t]here is evidence from which this Court can find [mother] has experienced substantial circumstantial changes in her own personal life and environment," but concluded that "[t]here [wa]s an insufficient showing of affect on the child [D.L.B.] whether positive or negative" because "there [wa]s no evidence put forth to show effect on the child."

Evidence was presented that, in early 2003, D.L.B. was evaluated for and began participating in an individualized preschool special education program at her school to address her developmental delays, particularly in the areas of receptive and expressive language. Following an audiological evaluation with an ear, nose, and throat specialist, D.L.B.'s adenoids and tonsils were removed in April 2003 to correct her diagnosed hypernasality, and speech therapy was added to her individualized education program. D.L.B.'s progress on a variety of developmental goals was evaluated on 12 February, 31 March, 26 May, and 9 September 2003, and D.L.B. was reported to have moved from "No progress made" to "Little progress made" to "Some progress made" for each of the goals. In addition, grandmother

testified that, in February 2006, she began sending D.L.B. to see a licensed professional counselor to further assist D.L.B. with overcoming her learning deficiencies. Thus, although the court found that D.L.B. suffered from "severe" developmental delays, evidence was presented that D.L.B. was receiving the recommended medical and therapeutic treatments she needed to aid her development while in grandmother's custody.

The guardian ad litem testified that D.L.B. is "just full of energy, she's very lively. She's a very sweet child, she likes to hug." She also testified that D.L.B. "loves to do things with her grandmother in the apartment complex that [sic] she lives. She enjoys bike riding and roller skating. She told me that she plays basketball and . . . that she played on a real team called the Allstars . . . ." During her visit at grandmother's house, the guardian ad litem observed that D.L.B. "would go over and give [grandmother] hugs and tell her she loved her and so forth."

The guardian ad litem further testified that D.L.B. "knows that she has a biological mother that is not [grandmother], but she does refer to [grandmother] as [']mama.[']" She testified that D.L.B. told her "that she had not seen her [biological mother] in quite some time and she really could not remember when was the last time that she had seen her." D.L.B. "didn't express any fear of having a biological mom and not knowing or anything of that nature. She—she basically just didn't seem to know a whole lot about her."

"In cases involving custody of children, the trial judge, who has the opportunity to see and hear the parties and the witnesses, is vested with broad discretion." *In re Williamson*, 32 N.C. App. 616, 620, 233 S.E.2d 677, 680 (1977) (citing *Blackley v. Blackley*, 285 N.C. 358, 204 S.E.2d 678 (1974)). "[A]bsent a clear showing of abuse of discretion," *id.*, "should we conclude that there is substantial evidence in the record to support the trial court's findings of fact, such findings are conclusive on appeal, even if record evidence might sustain findings to the contrary." *Shipman*, 357 N.C. at 475, 586 S.E.2d at 253-54 (internal quotation marks omitted); *see also Thompson v. Wake County Bd. of Educ.*, 292 N.C. 406, 414, 233 S.E.2d 538, 544 (1977) ("Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks omitted).

Here, evidence was presented that D.L.B. was an energetic, loving child who showed incremental progress in her development under

the care and supervision of medical and educational personnel while in the custody of grandmother. Since the effects of mother's changed circumstances on D.L.B.'s welfare were not "self-evident," mother had the burden to show "evidence *directly* linking the change[s in her circumstances] to the welfare of [D.L.B.]" *See Shipman*, 357 N.C. at 478, 586 S.E.2d at 256 (citing 3 Suzanne Reynolds, *Lee's North Carolina Family Law* § 13.103 (5th rev. ed. 2002)). We recognize that mother has not been able to demonstrate the effect that the changed circumstances "in her own personal life and environment"—recognized as "substantial" by the trial court—might have on D.L.B. largely because she has been ordered to have no contact with D.L.B. Additionally, the guardian ad litem testified that grandmother purposefully withheld gifts from D.L.B. that mother sent to her over the years while in grandmother's custody including: an Easter basket, because grandmother "complained that it was just candy and nothing else"; and a blouse, because grandmother "was not particularly happy about [the blouse] being purchased at Wal-Mart." Nonetheless, the moving party has the burden of proving a "nexus" between the changed circumstances and the welfare of the child in order for the trial court to determine that a child support order may be modified. *See id.* at 478, 586 S.E.2d at 255-56 (citing 3 Suzanne Reynolds, *Lee's North Carolina Family Law* § 13.103 (5th rev. ed. 2002)). Therefore, since mother did not present evidence that her substantial change in circumstances affected D.L.B., we must find that the trial court did not err by denying mother's motion to modify the January 2004 custody order.

No error.

Judges STEELMAN and STEPHENS concur.