An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1210

NORTH CAROLINA COURT OF APPEALS

Filed:  5 August 2014

LAURA H. ROBERTS (now Huckabee),
    Plaintiff

v.

Durham County
No. 09 CVD 0307

JOHN B. ROBERTS,
    Defendant

Appeal by defendant from order entered 2 July 2013 by Judge James T. Hill in Durham County District Court.  Heard in the Court of Appeals 18 February 2014.

> *Brock & Meece, P.A., by Paul B. Brock, for Plaintiff.*
>
> *Smith, James, Rowlett & Cohen, LLP, by Norman B. Smith, for Defendant.*

ERVIN, Judge.

Defendant John B. Roberts appeals from an order denying his motion for the restoration of his visitation and custody rights and granting Plaintiff Laura H. Roberts' motion that Defendant be held in contempt.  On appeal, Defendant argues that the trial court erred by permanently ending his visitation with his minor children and by holding him in contempt of court for having filed an independent civil action in the Orange County Superior

Court. After careful consideration of Defendant's challenges to the trial court's order in light of the record and the applicable law, we conclude that Defendant's appeal from the trial court's contempt decision is not properly before us and that the trial court's visitation decision should be affirmed.

## I. Factual Background

Plaintiff and Defendant were married on 8 August 1998, separated on or about 30 December 2008, and were granted an absolute divorce on 17 February 2010. The parties are the parents of two minor children, Martin and Wendy.[1]

On 20 March 2009, Plaintiff filed a complaint in Durham County District Court asserting, among other things, claims for custody and support against Defendant. Defendant filed an answer and counterclaim on 5 May 2009 in which he sought, among other relief, joint custody of the children. In a memorandum of judgment filed on 11 May 2009, which was confirmed by a consent order entered on 20 May 2009, Plaintiff and Defendant were awarded joint custody of the children on a temporary basis, with the children to reside with Plaintiff, to spend alternate weekends with Defendant, to have overnight visits with Defendant on alternate Wednesdays, and to spend designated vacation periods with Defendant.

---

[1]"Martin" and "Wendy" are pseudonyms which will be used for ease of reading and to protect the children's privacy.

On 2 July 2009 and 28 October 2009, respectively, Plaintiff filed motions to have a psychological evaluation of Defendant performed and a motion to have Defendant held in contempt and for temporary custody of the children. On 29 October 2009, an order appointing Dr. Conrad Fulkerson to evaluate Defendant's mental status was entered. After completing his evaluation, Dr. Fulkerson opined that Defendant suffered from Type I Bipolar Disorder; that Defendant had a substance abuse disorder that was, at that time, in remission; and that he had a diagnosable personality disorder. Although Dr. Fulkerson acknowledged that an assessment of Defendant's capacity to co-parent his children exceeded the scope of his assignment, he believed that Defendant's relationship with Plaintiff appeared to be sufficiently dysfunctional to raise concerns about the children's welfare. According to Dr. Fulkerson, "more extensive treatment, including adequate and very careful monitoring of medication treatment, would be necessary" given Defendant's diagnosis.

On 21 January 2010, a consent order providing that the parties would continue to have joint legal custody of the children, with Plaintiff having primary physical custody and Defendant having the right to visit with the children every other weekend, overnight or at dinner on alternate Wednesday

nights, and during specified vacation periods, was entered. In addition, the consent order provided that Defendant's ability to visit with the children was dependent upon his compliance with Dr. Fulkerson's mental health treatment recommendations and a requirement that Defendant participate in regular psychiatric treatment and provide Plaintiff with quarterly written verification that he was in compliance with this requirement. Finally, the consent order provided that:

> Neither party shall discuss with the minor children the content of the children's discussions with [their therapist,] Ms. [Teresa] McInerney, nor shall either party instruct the minor children as to what they should discuss with or tell Ms. McInerney. Interference with the minor children's therapy with Ms. McInerney shall constitute grounds for modification of this Court's order regarding the minor children. Neither party shall attempt or condone any attempt, either directly or indirectly, to estrange either child from the other party, or to impair the natural love and affection between the parent and children.

On 19 August 2010, a consent order providing that Defendant's treating psychiatrist should send a letter to Plaintiff's attorney on a quarterly basis identifying the dates upon which Defendant attended his mandatory therapy sessions and providing updated information concerning the progress that Defendant was making in therapy and the extent of his compliance with random drug testing was entered.

On 28 October 2010, Plaintiff filed a motion seeking to have Defendant held in contempt, to modify the existing visitation arrangement, and to restrict Defendant's access to the children pending the provision of assurances that Defendant did not pose a danger to the children, with this request being predicated on an assertion that Defendant had repeatedly attempted to interfere with the therapy being provided to the children and had attempted to intimidate Ms. McInerney. After a hearing held on 31 January 2011, the trial court entered an order on 2 February 2011 finding Defendant in contempt based upon his treatment of Ms. McInerney and his conduct in making disparaging remarks to the children about Plaintiff. In the 2 February 2011 order, the trial court modified the existing visitation arrangement by requiring that Defendant's visitation with the children be supervised by one or both of his parents. Defendant's visitation rights remained contingent upon his compliance with the requirements set forth in previous orders, including the requirement that Defendant not make any disparaging remarks to the children concerning Plaintiff or interfere with the children's therapy.

On 17 February 2011, Plaintiff filed a motion seeking the entry of an emergency order suspending Defendant's visitation based upon a letter from his psychiatrist which indicated that

Defendant had not received treatment since November 2010. In addition, Plaintiff alleged that Defendant's parents had not been present during Defendant's visits with the children, that Defendant had been making allegations against Plaintiff to the children, that Defendant had been acting in an erratic and otherwise troublesome manner, and that the children's best interests would not be served by allowing them to be in Defendant's presence when he was not receiving mental health treatment. On that same day, Judge Hill entered an *ex parte* order suspending Defendant's visitation pending a hearing to be held on 28 February 2011.

After the 28 February 2011 hearing, during which Ms. McInerney provided information to the trial court in chambers, the trial court entered an order on 1 March 2011 finding as fact that the children's best interests would be served by remaining in therapy with Ms. McInerney and ordering that the relief granted in the 17 February 2011 *ex parte* order remain in effect. After a hearing held on 9 March 2011, the trial court entered an order finding that Defendant was in contempt based upon his failure to pay past due child support and certain fees that were owing for Ms. McInerney's services and ordering Defendant to refrain from contacting the minor children "except as authorized by the children's therapist, the Plaintiff's family, . . . or

the Plaintiff's counsel." On 15 June 2011, the trial court entered an order providing that Defendant be incarcerated in the Durham County jail for a period not to exceed 90 days based upon his failure to comply with the 9 March 2011 order.

On 23 March 2012, Defendant filed a motion seeking to have the trial court disqualified from further participation in this case based upon allegations that the trial court was biased against him. On the same date, Defendant filed a motion seeking to have his visitation and custody rights restored on the grounds that he had become compliant with the trial court's orders and that the best interests of the children would be served by resuming visitation.

On 25 April 2012, Plaintiff filed a response to Defendant's disqualification motion. After holding a hearing with respect to the issues raised by Defendant's disqualification motion on 1 May 2012, Judge Doretta Walker entered an order denying Defendant's motion on 3 January 2013.

After Plaintiff filed a response to Defendant's motion for the restoration of his visitation rights, a hearing concerning that subject was held before the trial court on 19 July 2012. At the hearing, Plaintiff presented the report from Dr. Fulkerson while Defendant presented the testimony of Dr. Mark Moffett, who stated that Defendant had been his patient for

approximately one year and that, in his opinion, Defendant had an adjustment disorder with disturbances of mood and anxiety or depression characteristic of a narcissistic personality disorder. Dr. Moffett saw no evidence that Defendant was currently using drugs or abusing alcohol or that Defendant suffered from a bipolar disorder, although he could not completely rule out the possibility that Defendant suffered from such a disorder. Finally, Dr. Moffett testified that, while he had seen no evidence that Defendant posed a danger to his children, he could not formulate an opinion concerning the extent to which Defendant could safely be in his children's presence and that long term psychotherapy would be Defendant's optimal treatment option.

At the 19 June 2012 hearing, Defendant testified that his communications with his children had been limited to phone calls initiated by his children and monitored by Plaintiff, that he wanted to visit with the children, and that, as far as he knew, the children wanted to visit with him. Defendant denied that he currently used alcohol to excess and claimed that he had never physically harmed the children or abused them in any way. At the conclusion of Defendant's testimony, Plaintiff moved to dismiss Defendant's motion for insufficiency of the evidence to support an award of the relief that Defendant had requested.

On 16 August 2012, the trial court entered an order granting Plaintiff's motion to dismiss Defendant's motion. In its order, the trial court found as fact that Defendant had failed to remain in regular treatment with a psychiatrist on an ongoing basis given that he not seen his psychiatrist since March 2012; that Defendant had failed to submit to random drug testing under psychiatric supervision; and that Defendant had failed to verify in writing that he was actively involved in, and compliant with, the required psychiatric treatment.

On 7 February 2013, Defendant filed another motion seeking the restoration of his custody and visitation rights. Defendant's motion was accompanied by seven verifications relating to the psychiatric treatment that Defendant had received from Dr. Moffett and evidence that Defendant had submitted to medically supervised drug tests. In his motion, Defendant stated that he had been in regular treatment with his psychiatrist, that he had provided the required written verification of his active participation in psychiatric treatment, and that he had been submitting to random drug tests. According to Defendant, this evidence supported a determination that there had been a substantial change in circumstances sufficient to justify restoration of Defendant's custody and visitation rights.

On 27 March 2013, Plaintiff filed a motion seeking to have Defendant held in contempt based on allegations that Defendant had interfered with the children's therapy by filing a separate civil action against Ms. McInerney in the Orange County Superior Court in which he asserted claims for infliction of emotional distress, conspiracy, and interference with familial rights. Although the Orange County action against Ms. McInerney was dismissed, Ms. McInerney had incurred substantial legal fees in the course of defending herself against Defendant's claims.

A hearing was held on 1-2 May 2013 for the purpose of considering Defendant's motion for the restoration of his custody and visitation rights and Plaintiff's motion to have Defendant held in contempt. At the hearing, Ms. McInerney testified that Defendant had been instructing the children to refrain from trusting or talking to her and that Martin was distressed by false statements that Defendant had made to him. According to Ms. McInerney, the children were thriving, doing well academically, and had an appropriate set of friendships and stated that, in her clinical opinion, the children's best interests would be served by leaving the existing visitation schedule unchanged.

Defendant, on the other hand, testified that he had never physically harmed the children and that he had tried in every

possible way to comply with the trial court's orders. Defendant promised to refrain from making negative comments about Plaintiff in the presence of the children or recording anything said by the children or any other party. Finally, Defendant promised to comply with any order that the trial court might enter in order to ensure that he had the ability to visit with his children.

With the consent of the parties, the trial court interviewed Martin in chambers in Ms. McInerney's presence. Although Martin expressed love for both of his parents, he indicated that he did not believe that it would be beneficial for him to see Defendant. Martin stated that he had nightmares about Defendant, that Defendant made negative comments about Plaintiff during their conversations, and that he did not want to see Defendant.

Similarly, the trial court heard testimony from Ms. McInerney concerning Defendant's last communication with Wendy, which took the form of a phone conversation that Ms. McInerney monitored. During that conversation, Defendant made negative statements about Wendy's school, stated that she was a "bad reader," and implied that her alleged academic deficiencies stemmed from sadness over her inability to see Defendant. As a

result of the fact that this phone conversation had been very upsetting, Wendy had not requested to speak to Defendant again.

On 2 July 2013, the trial court entered an order denying Defendant's motion for restoration of his custody and visitation rights and granting Plaintiff's contempt motion. Defendant noted an appeal to this Court from the 2 July 2013 order and orders that the trial court had previously entered on 16 August 2012, 19 July 2012, and 17 February 2011. On 7 October 2013, the trial court entered an order dismissing all of Defendant's appeals except the one that he had noted from the 2 July 2013 order on the grounds that those appeals been taken in an untimely manner.

## II. Substantive Legal Analysis

### A. Request for *Certiorari* Review of Earlier Orders

As an initial matter, we must consider Defendant's request that this Court review his challenges to the 17 February 2011, 19 July 2012, and 16 August 2012 orders utilizing our *certiorari* jurisdiction. However, Defendant has not advanced any challenge to the 19 July 2012 or 16 August 2012 orders in his brief. In addition, although Defendant alludes to the 17 February 2011, 1 March 2011, and 9 March 2011 orders in his brief, he has not cited any authority in support of his apparent contention that he should receive relief from these orders on appeal. Finally,

Defendant has failed to offer any explanation for his failure to note an appeal from any of these orders in a timely manner. As a result, in spite of the fact that this Court has the authority, in the exercise of it discretion, to issue a writ of *certiorari* where a defendant's "right to prosecute an appeal has been lost by failure to take timely action," N.C. R. App. P. 21(a), we elect to refrain from exercising that authority given Defendant's unexplained delay in failing to challenge the validity of those orders on appeal and his failure to provide any compelling basis for believing that those orders are affected by any error of law. As a result, the only order properly before this Court on appeal is the 2 July 2013 order.

## B. Challenges to the 2 July 2013 Order

### 1. Contempt Decision

In his first challenge to the trial court's order, Defendant contends that the trial court erred by holding Defendant in contempt on the grounds that he filed a separate civil action against Ms. McInerney in Orange County Superior Court. More specifically, Defendant argues that the trial court erred in the course of holding him in contempt given that the trial court lacked the authority to order him to pay attorney's fees in a contempt proceeding, that the underlying order that Defendant was alleged to have violated was unclear, that the

trial court failed to provide Defendant with required procedural protections, and that sanctioning Defendant for filing a separate civil action violated his constitutional right to have access to the courts. Defendant's appeal from the trial court's contempt decision is not properly before us.

Contempt may be either civil or criminal in nature, *Watson v. Watson*, 187 N.C. App. 55, 61, 652 S.E.2d 310, 315 (2007), *disc. review denied*, 362 N.C. 373, 662 S.E.2d 551 (2008), with the distinction between criminal and civil contempt having been described as "hazy at best." *O'Briant v. O'Briant*, 313 N.C. 432, 434, 329 S.E.2d 370, 372 (1985). "'A major factor in determining whether contempt is criminal or civil is the purpose for which the power is exercised.'" *Watson*, 187 N.C. App. at 61, 652 S.E.2d at 315 (quoting *Bishop v. Bishop*, 90 N.C. App. 499, 503, 369 S.E.2d 106, 108 (1988)). "Criminal contempt is administered as punishment for acts already committed that have impeded the administration of justice in some way[,]" *Brower v. Brower*, 70 N.C. App. 131, 133, 318 S.E.2d 542, 544 (1984), while the purpose of civil contempt is to coerce compliance with a court order. *Scott v. Scott*, 157 N.C. App. 382, 393, 579 S.E.2d 431, 438 (2003). In the event that "a party may avoid the contempt sentence or fine by performing the acts required in the court order, the contempt is best characterized as civil."

*Watson*, 187 N.C. App. at 61, 652 S.E.2d at 315. While civil contempt orders entered in the District Court are properly appealed from the District Court to this Court, criminal contempt orders entered in the District Court are properly appealed from the District Court to the Superior Court. N.C. Gen. Stat. § 5A-17; N.C. Gen. Stat. § 5A-24; *Hancock v. Hancock*, 122 N.C. App. 518, 522, 471 S.E.2d 415, 418 (1996).

Although the parties to this case disagree about the proper resolution of many issues, they do agree that the trial court's contempt order constituted an exercise of the trial court's criminal, rather than civil, contempt authority. As we have already noted, the contempt order that Defendant seeks to challenge on appeal found Defendant in contempt for interfering with the therapy that Ms. McInerney was providing to the children by filing a separate civil action against her in the Orange County Superior Court. As a result, the trial court's contempt order sanctioned Defendant for an "act[] already committed that [] impeded the administration of justice in some way." *Brower*, 70 N.C. App. at 133, 318 S.E.2d at 544. In addition, the contempt order at issue here did not contain any provision describing the manner in which Defendant could purge himself of the contempt, a component that should be contained in all civil contempt orders. N.C. Gen. Stat. § 5A-23(e). Thus,

since the trial court's order involved the imposition of sanctions for criminal contempt and since any appeal from the trial court's contempt order should have been taken from the District Court to the Superior Court rather than to this Court, Defendant's challenge to the trial court's contempt order is not properly before us. *Hancock*, 122 N.C. App. at 522, 471 S.E.2d at 418. As a result, we have no authority to disturb the trial court's contempt order and will refrain from doing so.

## 2. Visitation Decision

Secondly, Defendant contends that the trial court erred by denying his motion for restoration of his custody and visitation rights. More specifically, Defendant argues that the trial court's decision amounted to a complete termination of his fundamental right to parent his children in the absence of a finding that Defendant was an unfit parent and that Defendant had made the required showing that a change in circumstances sufficient to support the restoration of his visitation rights had occurred. We do not find Defendant's arguments persuasive.

### a. Standard of Review

"When reviewing a trial court's decision to grant or deny a motion for the modification of an existing child custody order, the appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial

evidence," *Shipman v. Shipman*, 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003), with substantial evidence being "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 474, 586 S.E.2d at 253. "In addition to evaluating whether a trial court's findings of fact are supported by substantial evidence, this Court must determine if the trial court's factual findings support its conclusions of law." *Id.* at 475, 586 S.E.2d at 254. "[T]he trial court is vested with broad discretion in cases involving child custody," so that its decision will not be reversed on appeal absent a clear showing of abuse of discretion. *Pulliam v. Smith*, 348 N.C. 616, 624-25, 501 S.E.2d 898, 902 (1998). "The same standards that apply to changes in custody determinations are also applied to changes in visitation determinations." *Simmons v. Arriola*, 160 N.C. App. 671, 674, 586 S.E.2d 809, 811 (2003) (citing *Clark v. Clark*, 294 N.C. 554, 575-76, 243 S.E.2d 129, 142 (1978)); N.C. Gen. Stat. § 50-13.1(a) (stating that, "[u]nless a contrary intent is clear, the word 'custody' shall be deemed to include custody or visitation or both"). We will now review Defendant's challenges to the trial court's visitation decision in light of the applicable standard of review.

## b. Relevant Legal Principles

A person seeking to obtain the modification of an existing custody or visitation order must make a "motion in the cause and a showing of changed circumstances by either party or anyone interested[.]" N.C. Gen. Stat. § 50-13.7(a). "[B]efore a trial court may modify an existing custody order the trial court must determine that a substantial change of circumstances has occurred and that the change has affected the children's welfare." *Davis v. Davis*, __ N.C. App. __, __, 748 S.E.2d 594, 600 (2013). In such a modification proceeding, "the moving party has the burden of proving a 'nexus' between the changed circumstances and the welfare of the child in order for the trial court to determine that a child [custody] order may be modified." *Warner v. Brickhouse*, 189 N.C. App. 445, 454, 658 S.E.2d 313, 319 (2008). "If the trial court concludes either that a substantial change has not occurred or that a substantial change did occur but that it did not affect the minor child's welfare, the court's examination ends, and no modification can be ordered." *Shipman*, 357 N.C. at 474, 586 S.E.2d at 253.

### c. Analysis of Visitation Decision

In the course of denying Defendant's request for the restoration of his visitation rights, the trial court made the following findings of fact:

> 13. This Court finds as a fact that no substantial and material change

affecting the welfare of the minor children has occurred since the entry of the last Order.

14. The Court interviewed [Martin] in chambers, with the consent of the parents, with Ms. McInerney present. [Martin] is of a suitable age and discretion to speak to the court about his custodial arrangement. [Martin] loves both of his parents, but he expressed to the Court that he has no desire to see the Defendant.

15. This Court finds as a fact that the Defendant has made negative comments about the Plaintiff and her family in the presence of [Martin]. [Martin] shared some of these comments with the Court.

16. This Court finds as a fact that the Defendant, when the minor children were in his custody, would go outside of the house in the middle of the night to go outside in the yard to talk on the phone, leaving the children unattended in the house.

17. This Court finds as a fact that [Martin] has had nightmares about his father coming to get him.

18. The Defendant's last contact with the minor children was with [Wendy] in the fall of 2012. Said phone call was monitored by Ms. McInerney and [Wendy] was in good spirits prior to the phone call. During the phone conversation, the Defendant made negative statements about [Wendy's] school and her attending the Hill Center. He implied that she was not able to be a good student when she was sad about not being able to see her father. [Wendy's] attendance at the Hill Center

is in the minor child's best interest and the conversation was very upsetting to the child, especially when the Defendant stated that she was a "bad reader." [Wendy] has not requested to speak to her father since this conversation occurred.

19. The Plaintiff and her family have a good relationship with the minor children and the Court commends the Plaintiff and her family for their care of the children. Both children are doing well in school and are well-adjusted, active children.

20. Pursuant to this Court's Order entered February 2, 2011, which states in relevant part, "This Court will reconsider Defendant's visitation schedule at such time that the Court can hear from the minor children's court-appointed therapist, Teresa M. McInerney, LCSW upon proper notice to the parties," Ms. McInerney was asked her professional opinion. Ms. McInerney testified and this Court finds as a fact that changing the visitation schedule was not in the minor children's best interest.

21. The Defendant's conduct, words, and actions have inflicted tremendous harm on the minor children. The fact that the children have been so well adjusted and are thriving is a positive reflection on the efforts of the Plaintiff, her family, and Ms. McInerney.

Based upon these findings of fact, the trial court concluded as a matter of law that the prior orders suspending Defendant's

visitation with the children should remain in effect subject to further order of the Court.

A careful review of the record establishes that each of the relevant findings of fact has adequate evidentiary support. The trial court's findings were supported by testimony from Ms. McInerney, who stated that a change in the existing visitation schedule would not be in the children's best interest; by Martin's statement that he had no desire to see Defendant and has had nightmares about Defendant coming to get him; and by the evidence concerning Defendant's last conversation with Wendy, during which she became very upset and after which she requested that she not be allowed to speak with Defendant again. In addition, the undisputed record evidence showed that the children have been doing well both academically and socially. As a result, we hold that the trial court's findings of fact have adequate evidentiary support and support the trial court's conclusion of law to the effect that no substantial change in circumstances affecting the children's welfare had occurred since the entry of the last visitation order and that no change in the existing visitation arrangements should be made.

In seeking to persuade us to reach a different result, Defendant contends that the trial court should have found a substantial change in circumstances based upon Defendant's

testimony that he no longer abused drugs and alcohol, that he was seeking treatment for his mental health issues, and that he had promised to comply with any protective rules that the trial court deemed appropriate. In support of this argument, Defendant cites this Court's decision in *Simpson v. Simpson*, 149 N.C. App. 440, 562 S.E.2d 447 (2002), for the proposition that overcoming a drug dependency can support a substantial change in circumstances. In *Simpson*, however, the defendant adduced evidence that the substantial changes that had occurred in his life had served to benefit his child "emotionally, physically, intellectually, and medically," *Simpson*, 149 N.C. App. at 446, 562 S.E.2d at 450, while Defendant has made no such showing in this case. As a result of the fact that the trial court has the ultimate responsibility for performing the factfinding function, the fact that "the moving party has the burden of proving a 'nexus' between the changed circumstances and the welfare of the child," *Warner*, 189 N.C. App. at 454, 658 S.E.2d at 319, and the fact that Defendant has failed to adduce evidence demonstrating the existence of the required "nexus," we hold that the trial court did not err by failing to modify the existing visitation arrangement in light of Defendant's claim to have overcome his earlier drug and alcohol problems.[2]

---

[2]In addition, Defendant argues that he should be absolved

In addition, Defendant contends that the trial court's order was tantamount to a complete termination of the parental relationship between Defendant and his children and that such a result would be improper in the absence of a determination, which the trial court did not make, that Defendant was unfit to parent his children. In support of this contention, Defendant vigorously asserts that, under the existing visitation arrangement, all of the contacts that he is allowed to initiate with the children must be facilitated by Ms. McInerney, who had refused to do anything to assist in that process. We are not, however, persuaded by Defendant's characterization of the trial court's order given the court's continuing ability to modify the existing visitation arrangement in the future in the event that Defendant is able to make the required showing that a substantial change in circumstances affecting the children's welfare has occurred. *Warner*, 189 N.C. App. at 454, 658 S.E.2d at 319. For that reason, the fact that the trial court did not find that Defendant was an unfit parent has no bearing on the

from the responsibility for showing the existence of a substantial change in circumstances affecting the children's welfare given that the trial court's earlier visitation orders were affected with legal error despite the fact that those orders were not appealed in a timely fashion and remained in effect at the time of the hearing held with respect to Defendant's second modification motion. Defendant has not, however, cited any support for this proposition, and we know of none.

validity of its decision to deny Defendant's request for modification of the existing visitation arrangement. As a result, since none of Defendant's challenges to the trial court's visitation decision have merit, that portion of the 2 July 2013 order must be affirmed.

### III. Conclusion

Thus, for the reasons set forth above, we conclude that Defendant's challenge to the trial court's contempt decision is not properly before us and that none of Defendant's challenges to the trial court's visitation decision have merit. As a result, the trial court's order should be, and hereby is, affirmed.

AFFIRMED.

Judges McGEE and STEELMAN concur.

Report per Rule 30(e).